**OFFICE OF the GOVERNOR, Petitioner**

v.

**Jonathan BARI, Respondent.**

**Independence Visitor Center Corporation, Petitioner**

v.

**Jonathan Bari, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2011.

Decided May 4, 2011.

---

Andrea L. Bowman, Harrisburg, for petitioner Office of the Governor.

Michael D.M. Fabius, Philadelphia, for petitioner Independence Visitor Center, Corp.

Maxwell S. Kennerly, Philadelphia, for respondent.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge BROBSON.

In these consolidated petitions for review, the Office of the Governor (Office) and Independence Visitor Center Corporation (IVCC) challenge a final determination of the Office of Open Records (OOR), issued September 13, 2010, granting Jonathan Bari's (Bari) request for information pursuant to the Right–to–Know Law (RTKL).[1] For the reasons that follow, we reverse in part and vacate and remand for further proceedings.

IVCC is a private, not-for-profit Pennsylvania corporation formed pursuant to the Nonprofit Corporation Law of 1988, 15 Pa.C.S. §§ 1501–6162, on February 6, 1998. IVCC operates the Independence Visitor Center, the official visitor center for the greater Philadelphia region. Pursuant to IVCC's bylaws, IVCC's board of directors (Board) is divided into three classes of directors: Class A, Class B, and Class C. There is one Class B director and one Class C director. The remaining directors are Class A directors.[2] The Class B director, designated as the "Mayor's Representative," is to be appointed "by the Mayor of the City of Philadelphia who is incumbent from time to time."[3] (Reproduced Record (R.R.) at 63a–64a.) The Class C director, designated as the "Governor's Representative," is to be appointed "by the Governor of the Commonwealth of Pennsylvania who is incumbent from time

---

**1.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104.

**2.** As of August 3, 2010, IVCC's Board consisted of 17 directors.

**3.** Section 3.1.1 of IVCC's bylaws provides:
The "Mayor's Representative" shall be nominated by the Mayor of the City of Phil-adelphia who is incumbent from time to time (the "Mayor"), and the election of such nominee by the Board of Directors shall be effective automatically upon the receipt of the Board from the Mayor of written notice of such nomination.
(R.R. at 64a.)

to time."[4] (*Id.*) According to the affidavit of Christine Keates (Keates), General Manager of IVCC, other than the ability to designate one director, there is no role, duty, or responsibility reserved for or required from either the Governor or the Mayor in IVCC's bylaws or articles of incorporation. (R.R. at 107a.)

By letter dated March 18, 2003, then Governor Edward G. Rendell (Governor Rendell) exercised the authority given him by IVCC's bylaws and designated William Graham (Graham) to serve as the Class C director on IVCC's Board. The March 18, 2003 letter, addressed to Graham on official Commonwealth letterhead and signed by Governor Rendell, provided, in its entirety: "It is with pleasure that I write to inform you that I am appointing you as my representative to serve on the Independence Visitor's Corporation." (R.R. at 36a.) According to Graham's affidavit, Graham has not served as an official in or been employed by the Office, Graham does not have a contract with the Office, and Graham does not report to or take instructions from the Office. (R.R. at 110a.)

On January 11, 2010, Bari filed a RTKL request with the Office,[5] seeking the following information relating to IVCC:

1) Copies of all documentation including correspondence by and between the IVCC and/or the IVCC Board of Directors with the Governor of Pennsylvania and/or his staff from January 1, 2001 to January 9, 2010.

2) Copies of all documentation including correspondence by and between the Governor of Pennsylvania and the IVCC whereby the Governor wrote to the IVCC chairman of the Board to provide written notice of such nomination to the IVCC Board of Directors for the "Governor's Representative," in accordance with the IVCC Bylaws ... from February 6, 1998 to January 9, 2010.

3) Copies of all IVCC meeting minutes or the equivalent ("Minutes") of the Board of Directors from its [sic] January 1, 2004 to January 10, 2010 that have been provided to Mr. Graham and/or the Governor's office including to the Governor and his staff.

(R.R. at 114a.)

On February 19, 2010, the Office granted in part and denied in part Bari's request. Specifically, the Office withheld an attachment to a letter from William W. Moore (Moore), former President and CEO of IVCC, to Governor Rendell, dated July 9, 2004, and a 2003 memorandum from Moore to Governor Rendell. The Office determined that these documents reveal "confidential proprietary information"[6] of IVCC and, therefore, are exempt

---

4. Section 3.1.2 of IVCC's bylaws provides:
 The "Governor's Representative" shall be nominated by the Governor of the Commonwealth of Pennsylvania who is incumbent from time to time (the "Governor"), and the election of such nominee by the Board of Directors shall be effective automatically upon the receipt of the Board from the Governor of written notice of such nomination.
 (R.R. at 64a.)

5. The Office is expressly listed as a "commonwealth agency" under Section 102 of the RTKL, 65 P.S. § 67.102.

6. Section 102 of the RTKL defines "confidential proprietary information" as:
 Commercial or financial information received by an agency:
 (1) which is privileged or confidential; and
 (2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information."

from disclosure under Section 708(b)(11) of the RTKL, 65 P.S. § 67.708(b)(11).[7] The Office also denied Bari's request for IVCC's Board Minutes, reasoning:

> The [Office] does not have copies of IVCC [B]oard [M]inutes within its possession, custody, or control. The [Office] has no obligation to obtain any meeting minutes or their equivalent that may be in Mr. Graham's possession because neither Mr. Graham nor the IVCC are conducting a "governmental function" for the Commonwealth pursuant to 65 P.S. § 67.506(d).

(R.R. at 26a.) Bari did not appeal the Office's partial denial of his request to OOR.

On August 3, 2010, Bari filed a second RTKL request with the Office, seeking the following information relating to IVCC:

A) Attachment to the letter dated July 9, 2004 from [Moore] ... to Governor Rendell....

B) 2003 memorandum from [Moore] to Governor Rendell about the IVCC;

C) All meeting minutes from March 18, 2003 (the day that Governor Rendell appointed [Graham] in writing as the "Governor's Representative["] on the IVCC Board of Directors) to August 2, 2010 of the IVCC Board of Directors that are in the possession of the [Office] including in the possession of the "Governor's Representative" who Governor Rendell officially appointed to serve on the Board of the IVCC to represent the [Office]. (R.R. at 12a.)

On August 10, 2010, the Office denied Bari's request. The Office reiterated that the attachment to the July 9, 2004 letter and the 2003 memorandum are exempt from disclosure under Section 708(b)(11) of the RTKL because they reveal "confidential proprietary information" of IVCC, and that IVCC's Board Minutes are not in the possession, custody, or control of the office. (R.R. at 22a.) The Office further denied Bari's request on the grounds that it was disruptive under Section 506(a) of the RTKL, 65 P.S. § 67.506(a),[8] explaining:

> The RTKL does not require agencies to be unreasonably burdened by having to repeatedly answer the same request from the same requester for the same record. As you have previously requested these records and the [Office] already responded to this request for the same records, which denial was not appealed by you, your new request for the same records is denied under [Section 506(a) of the RTKL] regarding disruptive requests.
>
> . . . .
>
> Pursuant to the RTKL, you had the right to appeal our February 19, 2010 response. You did not file an appeal regarding this RTKL request. The RTKL protects the [Office] from being unreasonably burdened by having to expend duplicative commonwealth resources for responding to yet another

---

7. Section 708(b)(11) of the RTKL provides:
 (b) Exceptions.—Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
 . . . .
 (11) A record that constitutes or reveals a trade secret or confidential proprietary information.

8. Section 506(a) of the RTKL, provides, in pertinent part:
 (a) Disruptive requests.—
 (1) An agency may deny a requester access to a record if the requester has made repeated requests for that same record and the repeated requests have placed an unreasonable burden on that agency.

request from you for the exact same records that were previously requested, to which a response was made and no appeal filed.

(R.R. at 22a.)

On August 11, 2010, Bari appealed the Office's denial of his August 3, 2010 RTKL request to OOR pursuant to Section 1101(a) of the RTKL, 65 P.S. § 67.1101(a).[9] On August 12, 2010, IVCC asserted a direct interest in the appeal and requested the right to participate pursuant to Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c),[10] which was granted by OOR. Thereafter, the Office and IVCC filed submissions to OOR in support of the Office's denial of Bari's RTKL request.

Without holding a hearing, OOR issued a final determination on September 13, 2010, granting Bari's appeal. OOR determined that Bari's request was not properly denied as disruptive under Section 506(a) of the RTKL, that IVCC's Board Minutes are "public records" under the RTKL, and that the requested information is not exempt from disclosure under Section 708(b)(11) of the RTKL.

On September 22, 2010, the Office requested reconsideration from OOR, which was denied on October 5, 2010. Thereafter, the Office and IVCC separately petitioned this Court for review of OOR's September 13, 2010 final determination on October 12, 2010, and October 13, 2010, respectively. By order entered November 22, 2010, this Court consolidated the subject petitions for review.

On appeal,[11] the Office and IVCC argue that IVCC's Board Minutes are not "public records" under the RTKL and that Bari's request was properly denied as disruptive under Section 506(a) of the RTKL. IVCC also argues that the requested information contains "confidential proprietary information" exempt from disclosure under Section 708(b)(11) of the RTKL. We address these issues in order.

The Office and IVCC argue, first, that IVCC's Board Minutes are not "public records" under the RTKL. Section 301(a) of the RTKL, 65 P.S. § 67.301(a), compels Commonwealth agencies, such as the Office, "to provide *public records* in accordance with this act." (Emphasis added.) Section 701(a) of the RTKL, 65 P.S. § 67.701(a), further provides that "[u]nless otherwise provided by law, a *public record* ... shall be accessible for inspection and duplication in accordance with this act." (Emphasis added.) IVCC's Board Minutes, therefore, will be subject to disclo-

---

9. Section 1101(a) of the RTKL provides, in pertinent part:

　(a) Authorization.—
　　(1) If a written request for access to a record is denied ..., the requester may file an appeal with [OOR] ... within 15 business days of the mailing date of the agency's response.

10. Section 1101(c) of the RTKL provides, in pertinent part:

　(c) Direct interest.—
　　(1) A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.

11. This Court "is entitled to the broadest scope of review" in reviewing a final determination of OOR, but "should consider the manner of proceeding most consistent with justice, fairness, and expeditious resolution." *Bowling v. Office of Open Records*, 990 A.2d 813, 820, 823 (Pa.Cmwlth.2010) (en banc), *appeal granted*, —— Pa. ——, 15 A.3d 427 (2011). Under our standard of review, this Court "independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency." *Id.* at 818.

sure only if they constitute "public records" under the RTKL.

 Whether sought after information constitutes a "public record" is a preliminary, threshold issue that must be decided before reaching the question of whether any exceptions under Section 708 of the RTKL apply. The burden of proving that a requested piece of information is a "public record" lies with the requester. There are three sections of the RTKL relevant to determining whether requested information constitutes a "public record." Section 102 of the RTKL defines "public record," in pertinent part, as "[a] *record* . . . of a Commonwealth or local agency." (Emphasis added.) Section 305 of the RTKL, 65 P.S. § 67.305, provides, in pertinent part, that "[a] *record* in the possession of a Commonwealth agency or local agency shall be presumed to be a public record." (Emphasis added.) Finally, Section 506(d)(1) of the RTKL, 65 P.S. § 67.506(d)(1), provides:

A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, *shall be considered a public record of the agency* for purposes of this act. (Emphasis added.) [12] The necessary implication under each of these sections is that a requested piece of information must constitute a "record" under the RTKL in order to constitute a "public record" under

the RTKL. This Court, therefore, must first determine whether IVCC's Board Minutes constitute "records" under the RTKL.

Section 102 of the RTKL defines "record" as "[i]nformation . . . that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." There are two parts to this definition. First, the information sought must "document[ ] a transaction or activity of an agency." Second, the requested information must be "created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency."

Under the first part of Section 102 of the RTKL's definition of "record," we must first identify the "transaction or activity" of the Office implicated in this matter. In finding that IVCC's Board Minutes "document[ ] a transaction or activity" of the Office, OOR stated:

[T]he Governor chose to designate a representative to attend IVCC meetings in his place, but was not legally obligated to do so. Although the Office and IVCC argue that, since Graham is neither a public employee nor official under various statutes, his activities can never be made in an "official capacity," the Governor's official designation of Graham as his representative on the IVCC Board, sent from Commonwealth letterhead bearing the signature and title of Governor Rendell, literally placed Gra-

---

**12.** In *Allegheny County Department of Administrative Services v. A Second Chance, Inc.*, 13 A.3d 1025 (Pa.Cmwlth.2011) (*Second Chance*), this Court addressed the General Assembly's dual use of the term "public record" in Section 506(d)(1) of the RTKL. Using the rules of statutory construction, we determined that the General Assembly's first use of "public record" in Section 506(d)(1) of the

RTKL was unintended and must be interpreted to mean "record." *Id.* at 1036–39. This Court stated: "We, therefore, interpret Section 506(d)(1) as providing that a *record* in the possession of a party with whom an agency has contracted to perform a governmental function on behalf of the agency shall be deemed a 'public record.'" *Id.* at 1039 (emphasis added).

ham in the Governor's seat on the IVCC Board, meaning that Graham serves on the IVCC Board in *the Governor's* official capacity. Because Graham serves as the "Governor's representative" in accordance with his appointment and IVCC's bylaws, the ... Minutes document a "transaction or activity" of the Office.

(OOR's final determination, attached to Office's Brief, App. "A," at 7–8 (citations omitted) (emphasis in original).) OOR determined, therefore, that because Governor Rendell appointed Graham to the IVCC Board, all of Graham's activities on IVCC's Board were also activities of the Office. In other words, OOR determined that Graham became part of the Office by way of Governor Rendell's appointment.

 We disagree that an individual can become part of an agency, in either an official or representative capacity, solely by way of being appointed by a public official within that agency to the board of directors of a private, not-for-profit corporation, especially where, as here, the individual has no contract with and does not report to or take instructions from the agency. Accordingly, we find that the only "transaction or activity" of the Office implicated in this matter is Governor Rendell's appointment of Graham. Nevertheless, IVCC's Board Minutes may satisfy the first part of Section 102 of the RTKL's definition of "record" to the extent that they "document" Governor Rendell's appointment of Graham.

In *Second Chance,* this Court interpreted the term "documents" to mean "proves, supports, [or] evidences." *Second Chance,* 13 A.3d at 1034–35. There, the requester sought the names, birth dates, and hire dates of Second Chance employees performing services under a contract entered into between Second Chance and Allegheny County. Finding that the contract be-

tween Second Chance and Allegheny County was a "transaction or activity" of Allegheny County, this Court held that the requested information "document[ed] a transaction or activity" of Allegheny County because it evidenced the contractual relationship between Second Chance and Allegheny County. Similar to the requested information in *Second Chance,* IVCC's Board Minutes "document[ ] a transaction or activity" of the Office. While IVCC's Board Minutes stem from the activities of IVCC's Board, and not the Office, IVCC's Board Minutes also evidence Governor Rendell's appointment of Graham to IVCC's Board.

Having found that IVCC's Board Minutes "document[ ] a transaction or activity" of the Office, we must now determine whether IVCC's Board Minutes were "created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency" under the second part of Section 102 of the RTKL's definition of "record."

 In *Second Chance,* this Court explained that Section 102 of the RTKL does not limit "record" to only those documents that are "created, received or retained" by the agency. *Id.* We held that the information regarding Second Chance employees performing services for Allegheny County was "created, received or retained ... in connection with a transaction, business or activity" of Allegheny County, *i.e.,* the contract between Second Chance and Allegheny County, because Second Chance "created, received, or retained that information in connection with its contractual obligations to Allegheny County." *Id.* In other words, without the contract, Second Chance would not have "created, received or retained" information regarding its employees performing services for Allegheny County. Unlike the requested information in *Second Chance,* IVCC's Board Minutes

were not "created, received or retained ... in connection with a transaction, business or activity" of the Office, *i.e.*, Governor Rendell's appointment of Graham to IVCC's Board. IVCC's Board Minutes would have been "created, received or retained" whether Governor Rendell appointed Graham or not, as was the case before Graham was appointed in 2003. Accordingly, IVCC's Board Minutes are not "records" under Section 102 of the RTKL.

Even assuming, *arguendo*, that IVCC's Board Minutes are "records" under Section 102 of the RTKL, IVCC's Board Minutes will not be subject to disclosure unless they also qualify as "public records" under the RTKL. As we stated above, there are three sections of the RTKL relevant to determining whether requested information constitutes a "public record"—Sections 102, 305, and 506(d). As there is no contract to perform a governmental function between the Office and IVCC, or the Office and Graham, Section 506(d) of the RTKL is inapplicable. IVCC's Board Minutes, therefore, must constitute "public records" under either Section 305 or Section 102 of the RTKL.

Under Section 305 of the RTKL, "a record in the *possession* of a Commonwealth agency ... shall be presumed to be a public record." (Emphasis added.) Here, the Office repeatedly stated, first in its responses to Bari's RTKL requests and later in a statement made under penalty of perjury by Cathleen A. McCormack, the Office's Records Legal Liaison, that IVCC's Board Minutes are not in the possession, custody, or control of the Office. (R.R. at 22a, 26a, 72a.) In finding that IVCC's Board Minutes are in the possession of the Office, OOR reasoned, *inter alia:*

The Office stated in its original response that it "does not have copies of IVCC [B]oard [M]inutes within its possession, custody, or control." On appeal, however, the Office provided a statement signed under penalty of perjury that "[o]ther than [the Governor's appointment letter,] the Office ... has no additional records regarding Mr. Graham either in its possession, custody or under its control." ( [E]mphasis added). While an affidavit may serve as competent evidence of a record's nonexistence, the Office's statement from its Records Legal Liaison offers no information as to whether a search for responsive records was conducted or whether the attachment, memorandum, or any of the Minutes exist within the Office's possession, custody or control. As a result, the Office's statement that the records do not exist is an insufficient legal basis for denying the Request.

(OOR's final determination, attached to Office's Brief, App. "A," at 8 (citations omitted) (alterations in original).) In other words, OOR deemed IVCC's Board Minutes to be in the possession of the Office on the basis that the Office did not provide sufficient evidence that it was *not* in possession of IVCC's Board Minutes.

We disagree that the burden was on the Office to demonstrate that it did *not* have possession of IVCC's Board Minutes. As this Court has stated, "[i]t is settled beyond dispute in this Commonwealth that the party defending in an action is not required to prove a negative in order to prevail." *In re Prop. Situate Along Pine Rd. in Earl Twp.*, 743 A.2d 990, 994 (Pa. Cmwlth.1999), *appeal denied*, 563 Pa. 668, 759 A.2d 389 (2000). As it was Bari's burden to establish that IVCC's Board Minutes constitute "public records," it was similarly Bari's burden to establish that the Office has possession of IVCC's Board Minutes in order to give rise to the Section 305 presumption that IVCC's Board Min-

utes are "public records." If OOR was not satisfied with the Office's statements that it was not in possession of IVCC's Board Minutes, the proper action was not to deem IVCC's Board Minutes possessed, but to hold a hearing on the possession issue, or, in the very least, to require the Office to satisfy further its duty under Section 901 of the RTKL, 65 P.S. § 67.901.[13]

Notwithstanding, OOR further found that the Office was in possession of IVCC's Board Minutes based on the activities of Graham. OOR reasoned:

> Even assuming, *arguendo*, that the Office provided sufficient evidence that it does not have physical possession of the attachment, memorandum or Minutes, the fact remains, as IVCC implicitly acknowledges, that Graham, as the Governor's Representative, presumably received copies of the Minutes in the course of his duties or was entitled to them.

(*Id.* at 9.) OOR concluded, therefore, that the Office is in possession of IVCC's Board Minutes because Graham presumably is in possession of IVCC's Board Minutes.

Initially, to reiterate, we reject the proposition that an individual can become part of an agency solely by way of being appointed by a public official within that agency to the board of directors of a private, not-for-profit corporation. Whether Graham has possession of IVCC's Board Minutes, therefore, is irrelevant to whether the Office has possession of IVCC's Board Minutes. Moreover, the fact that Graham *presumably* received or is entitled to copies of IVCC's Board Minutes does not amount to a finding that Graham, in fact, possesses IVCC's Board Minutes. Accordingly, because OOR erred in finding that IVCC's Board Minutes are in the possession of the Office, it similarly erred in presuming that IVCC's Board Minutes are "public records" under Section 305 of the RTKL.

Having found that Section 305 of the RTKL's presumption does not apply, IVCC's Board Minutes will not be subject to disclosure unless they constitute "public records" under Section 102 of the RTKL. Furthermore, even if we assume, *arguendo*, that Section 305 of the RTKL's presumption does apply, the Office can rebut that presumption with a showing that IVCC's Board Minutes do not constitute "public records" under Section 102 of the RTKL.

Section 102 of the RTKL defines "public record," in pertinent part, as "[a] record ... *of* a Commonwealth or local agency." (Emphasis added.) The Office and IVCC argue that IVCC's Board Minutes do not meet this definition because they are records "of" IVCC, not records "of" the Office. We agree.

In *Second Chance*, this Court discussed the requirement found in Section 102 of the RTKL's definition of "public record" that a record be "of" the agency, explaining that "[t]he word 'of' is a preposition, used generally to indicate the object's origin, its owner or possessor, or its creator." *Second Chance*, 13 A.3d at 1035–36. Holding that the requested information, *i.e.*, the names, birth dates, and hire dates of Second Chance employees performing services for Allegheny County pursuant to the

---

**13.** Section 901 of the RTKL provides, in pertinent part:

Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request.

contract between Second Chance and Allegheny County, did not constitute a record "of" Allegheny County, we reasoned:

> There is nothing in the record to indicate that the information in question originated with [Allegheny] County, that [Allegheny] County has any ownership or possessory interest in the information, or that [Allegheny] County played any role in creating the information. Indeed, the names, hire dates, and birth dates of [Second Chance] employees appear to be information that only [Second Chance] created, possesses, or owns.

*Id.*

In so holding in *Second Chance*, this Court cited our decision in *In re Silberstein*, 11 A.3d 629 (Pa.Cmwlth.2011), where we engaged in a similar analysis. In *Silberstein*, this Court held that emails and other documents on a township commissioner's personal computer were not "public records" under the RTKL. We reasoned:

> Commissioner Silberstein is not a governmental entity. He is an individual public official with no authority to act alone on behalf of the Township.
>
> Consequently, emails and documents found on Commissioner Silberstein's personal computer would not fall within the definition of record as any record personally and individually created by Commissioner Silberstein would not be a documentation of a transaction or activity *of* York Township, as the local agency, nor would the record have been created, received or retained pursuant to law or in connection with a transaction, business or activity *of* York Township. In other words, unless the emails and other documents in Commissioner Silberstein's possession were produced with the authority of York Township, or were later ratified, adopted or confirmed by York Township, said requested records cannot be deemed "public records" within the meaning of the RTKL as the same are not "of the local agency."

*Id.* at 633 (emphasis in original).

■ Here, the only connection of record between the Office and IVCC's Board Minutes is Governor Rendell's appointment of Graham to IVCC's Board. Having rejected the proposition that Graham became part of the Office solely by way of Governor Rendell's appointment, it goes without saying that IVCC's Board, as a whole, also did not become part of the Office. Because IVCC's Board is not part of the Office, it follows that IVCC's Board Minutes are not "of" the Office. As in *Second Chance*, IVCC's Board Minutes did not originate with the Office, IVCC's Board Minutes were not created by the Office, and the Office does not have an ownership or possessory interest in IVCC's Board Minutes. Instead, IVCC's Board Minutes "appear to be [documents] that only [IVCC] created, possesses, and owns." *Second Chance*, 13 A.3d at 1035–36.

Furthermore, like *Silberstein*, Graham has no authority to act on behalf of the Office, and there is nothing in the record to indicate that the Office ever ratified, adopted, or confirmed IVCC's Board Minutes. That IVCC's Board Minutes are not "of" the Office is further bolstered by the fact that the emails and other documents in *Silberstein*—found not to be "of" York Township—originated with, were created by, and were in the possession of a duly elected public official of York Township, whereas here, Graham's sole connection to the Office is having been appointed to IVCC's Board by Governor Rendell. Even if we were to assume, *arguendo*, that Graham does have authority to act on behalf of the Office, the fact remains that Graham, as 1 of 17 directors, does not have authority to act alone on behalf of IVCC's Board, and, therefore, Graham's connec-

tion to the Office cannot be imputed upon the entirety of IVCC's Board. In that vein, IVCC's Board Minutes would not be records "of" the Office even if Governor Rendell had nominated himself to serve as director.

A holding that IVCC's Board Minutes constitute "public records" under the RTKL would have broad implications, subjecting the records of countless private, not-for-profit corporations, and possibly other private entities, to disclosure. As this Court has stated, "the [RTKL] is remedial legislation designed to promote access to *official government information* in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Bowling*, 990 A.2d at 824 (emphasis added). Keeping that purpose in mind, we cannot fathom how the General Assembly could have intended to open up the records of a private entity based solely on some marginal connection between that private entity and a government agency or public official. Accordingly, we hold that IVCC's Board Minutes are not "public records" under the RTKL.

█ The Office and IVCC argue, next, that the Office properly denied Bari's request as disruptive pursuant to Section 506(a) of the RTKL, which provides, in pertinent part: "An agency may deny a requester access to a record if the requester has made repeated requests for that same record and the repeated requests have placed an unreasonable burden on the agency." Under this section, therefore, an agency must demonstrate that (1) "the requester has made repeated requests for th[e] same record[(s)]" and (2) "the repeated requests have placed an unreasonable burden on the agency." Here, it is undisputed that Bari's August 3, 2010 RTKL request was repetitive, *i.e.*, that Bari requested the same documents that

were denied by the Office in response to Bari's January 11, 2010 RTKL request. Our analysis, therefore, is limited to determining whether Bari's repetitive request placed an unreasonable burden on the Office.

The Office and IVCC argue that the Office was unreasonably burdened by Bari's repetitive request because the Office had to "1) expend duplicative staff and attorney time for responding at length to a request that … was duplicative; 2) in a time of significant budgetary and staffing constraints; and 3) having to devote attorney and staff time to … a request that has been asked and answered." (Office's Brief at 18.) We disagree.

If this Court were to hold that the Office's and IVCC's proffered reasons were sufficient to establish an "unreasonable burden," Section 506(a) of the RTKL's "unreasonable burden" requirement would be rendered meaningless. The Office's first and third proffered reasons are virtually identical, *i.e.*, that the Office had to expend duplicative staff and attorney time in responding to Bari's repeated request. The duplicative expenditure of an agency's resources, however, is true of any repetitive request, and, in that vein, is more akin to establishing that a request is repetitive in the first place than it is to establishing that a request is unreasonably burdensome. Accordingly, the fact that the Office had to respond to Bari's request twice, in itself, is insufficient to establish an "unreasonable burden."

The Office's second proffered reason— that Bari's repetitive request was made during a time of budgetary and staffing constraints—is similarly lacking, especially where, as here, the Office did not explain what efforts it undertook in responding to Bari's repetitive request. Essentially, the Office is asking this Court to hold that a repetitive request will be deemed unrea-

sonably burdensome any time it is made during a period of budgetary and staffing constraints. This we will not do. The Office, therefore, failed to establish that Bari's request was disruptive under Section 506(a) of the RTKL.

We address, last, IVCC's argument that the requested information is exempt from disclosure under Section 708(b)(11) of the RTKL because it contains "confidential proprietary information." The application of Section 708(b)(11) of the RTKL is a matter of first impression before this Court. Having determined that IVCC's Board Minutes are not "public records" under the RTKL, only the attachment to the July 9, 2004 letter and the 2003 memorandum are relevant to this discussion.[14]

Section 708(b)(11) of the RTKL exempts from disclosure "[a] record that constitutes or reveals a trade secret or confidential proprietary information." Section 102 of the RTKL, in turn, defines "confidential proprietary information" as:

Commercial or financial information received by an agency:

(1) which is privileged or confidential; and

(2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information.

Pursuant to Section 708(a)(1) of the RTKL, "[t]he burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence." Accordingly, in order for Section 708(b)(11) of the RTKL's exemption to apply, the burden was on the Office to prove by a preponderance of the evidence that the attachment to the July 9, 2004 letter and the 2003 memorandum reveal "confidential proprietary information."

Here, by letter dated August 13, 2010, OOR requested additional information from the Office and IVCC regarding Bari's August 11, 2010 appeal.[15] In attempting to establish that the attachment to the July 9, 2004 letter and the 2003 memorandum reveal "confidential proprietary information," the Office submitted the affidavit of James J. Cuorato (Cuorato), President and CEO of IVCC, and IVCC submitted the affidavit of Keates. With regard to the attachment to the July 9, 2004 letter, Keates's affidavit provided, in pertinent part:

14. Disclosure of the financial information in the attachment to the letter dated July 9, 2004, from William W. Moore to Governor Rendell (the "Redacted Attachment") will put IVCC at a significant commercial disadvantage in negotiations with Mr. Bari and other vendors who wish to enter or renew a distribution agreement with IVCC.

15. The Redacted Attachment is a one-page statement of IVCC's financial position in 2005. For example, the Redacted Attachment would show the income that IVCC received in 2005 from

14. It is undisputed that the attachment to the July 9, 2004 letter and the 2003 memorandum constitute "public records" under the RTKL.

15. Neither the Certified Record nor the Reproduced Record include the August 13, 2010 letter sent by OOR. This Court, therefore, is unable to determine what instructions OOR provided to the Office and IVCC for providing a response. All we are able to discern from the record is that OOR requested the Office and IVCC to provide additional information regarding Bari's appeal (R.R. at 71a, 90a), and that OOR notified the Office and IVCC that "[a]ll facts relied upon must be supported by an affidavit made under penalty of perjury by a person with firsthand knowledge." (OOR's final determination, attached to Office's Brief, App. "A," at 12.)

its partners, from concessions, and from visitor center services. Such information could reveal to Mr. Bari and other vendors an estimate of the amount that IVCC charges for distribution agreements.

16. Attached is a copy of the Redacted Attachment with sufficient redactions to protect all confidential proprietary information. The attached version redacts IVCC's total income, total expenses, itemized income by category, itemized expenses by category, the categories by which IVCC tracks its income and expense, and three footnotes that offer additional information about IVCC's income and expenses.

(R.R. at 108a.) Concerning the 2003 memorandum, Cuorato's affidavit provided, in pertinent part:

2. On July 21, 2003, William W. Moore, then-President and Chief Executive Officer for IVCC, authored a memorandum to Governor [Rendell] regarding the Constitutional Walking Tour (see Exhibit A). The memorandum evaluated the Constitutional Walking Tour as a commercial product in and around Independence National Historical Park.

3. The memorandum constitutes commercial information which is confidential and the disclosure of which would cause substantial harm to the competitive position of IVCC.

(R.R. at 73a.)

Based on the above, and without conducting a hearing or in-camera review, OOR determined that the Office did not satisfy its burden of establishing that the requested information was exempt under Section 708(b)(11) of the RTKL. In so holding, OOR, citing to *Crum v. Bridgestone/Firestone North American Tire, LLC,* 907 A.2d 578, 585 (Pa.Super.2006),

stated that OOR considers the following factors in evaluating whether an exemption under Section 708(b)(11) applies:

1) the extent to which the information is known outside of the business;

2) the extent to which the information is known by employees and others in the business;

3) the extent and measures taken to guard the secrecy of the information;

4) the value of the information to the business and to competitors;

5) the amount of effort or money expended in developing the information; and

6) the ease of [sic] difficulty with which the information could be properly acquired or duplicated by others.

(OOR's final determination, attached to Office's Brief, App. "A," at 10.) Concerning the attachment to the July 9, 2004 letter, OOR determined that the Office "failed to provide any evidence supporting an allegation that the attachment was kept secret in any way." (*Id.* at 12.) With regard to the 2003 memorandum, OOR determined that Cuorato's affidavit "provides no factual detail with which the OOR may evaluate whether the responsive record was properly withheld as confidential proprietary information." (*Id.*)

We find that OOR erred in relying on *Crum* in determining whether the requested information is exempt from disclosure under Section 708(b)(11) of the RTKL. The issue in *Crum* was whether information sought during pre-trial discovery in a products liability action should be afforded trade secret status, not whether the requested information constituted "confidential proprietary information." Importantly, "confidential proprietary information" and "trade secret"[16] are defined separate-

16. Section 102 of the RTKL defines "trade secret," in pertinent part, as:

ly under Section 102 of the RTKL; therefore, the terms are not interchangeable. *See also Den–Tal–Ez, Inc. v. Siemens Capital Corp.*, 389 Pa.Super. 219, 566 A.2d 1214, 1224 (1989) ("[T]he terms 'confidential information' and 'trade secrets' do not equate, and may in fact refer to entirely different bodies of information."). OOR, therefore, improperly relied on the *Crum* factors in determining whether the attachment to the July 9, 2004 letter and the 2003 memorandum reveal "confidential proprietary information."

Furthermore, we question the manner in which OOR proceeded in this matter. OOR's reluctance to conduct hearings or to perform in camera review of the subject records in this type of proceeding is confounding. Without the benefit of having the August 13, 2010 letter sent by OOR before us, we cannot be sure what instructions OOR provided to the Office and IVCC in requesting additional information regarding Bari's appeal; however, from what we are able to discern from the record, OOR made a general request for additional information, and then, applying specific criteria not grounded in the RTKL, found that the information provided by the Office and IVCC was insufficient to satisfy the Office's burden. Given the fact that the RTKL is a relatively new and largely untested law, replete with ambiguity, and keeping in mind the informal appeals procedure outlined in the RTKL, we find it fundamentally unfair to permit disclosure of the requested information based on the Office's and IVCC's undeveloped preliminary responses to OOR's general request for additional information, to which OOR applied an unannounced and erroneous standard.

█ As we stated above, the burden is on the agency receiving a RTKL request to establish that an exemption under Section 708(b) of the RTKL applies. Such a burden is especially problematic where Section 708(b)(11) of the RTKL is at issue because the sought after information likely relates to private entities, who may or may not be aware of the pending action in light of the fact that neither the requester, the agency, nor OOR have a duty under the RTKL to provide notice to a third party whose interests may be implicated by a RTKL request. Releasing the potentially confidential information of a private entity based solely on an agency's failure to adequately defend a RTKL request could have serious due process implications. For this reason, OOR should take all necessary precautions, such as conducting a hearing or performing in camera review, before providing access to information which is claimed to reveal "confidential proprietary information" under Section 708(b)(11) of the RTKL.

Based upon the foregoing discussion, we will vacate OOR's final determination in part and remand the matter with instructions that OOR conduct a hearing on the issue of whether the "confidential proprietary information" exemption contained in Section 708(b)(11) of the RTKL is applicable to the attachment to the July 9, 2004 letter and the 2003 memorandum. As there does not appear to be a contention that the requested information is "privileged," under Section 102 of the RTKL's

---

Information, including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique or process that:

(1) derives independent economic value, actual or potential, from not being generally known to and not being readily as-
certainable by proper means by other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

definition of "confidential proprietary information," OOR must determine (1) whether the requested information is "confidential," and (2) whether disclosure of the requested information "would cause substantial harm to the competitive position" of IVCC.

### ORDER

AND NOW, this 4th day of May, 2011, the final determination of the Office of Open Records (OOR), issued September 13, 2010, is hereby REVERSED in part and VACATED in part. The matter is REMANDED for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.