**In re: ESTATE OF Catherine WOOD,**

**Appeal of: Joseph M. Cosgrove**

Superior Court of Pennsylvania.

Argued Nov. 20, 2002.
Filed Feb. 25, 2003.

Joseph M. Cosgrove, Forty Fort, in propria personna.

Arthur L. Piccone, Kingston, for appellee.

Before: STEVENS, OLSZEWSKI and BECK, JJ.

BECK, J.:

¶ 1 In this appeal from the trial court's order compelling an attorney to testify and produce reports, we review the attorney-client privilege, the work product doctrine and the lawyer's duty of confidentiality to clients. After careful consideration, we affirm and remand the matter to the trial court with instructions.

¶ 2 Catherine Wood (Wood) died on June 17, 1995. Her two daughters, Patricia Zabroski (Zabroski) and Bonita Walsh–Sukus (Walsh–Sukus) have been engaged in litigation over her estate since that time. The record reveals that a last will and testament signed by Wood in February of 1987 (the 1987 Will) provided that all of her assets be divided between her daughters in equal shares.

¶ 3 Throughout the period of 1990 through early 1995, Wood suffered several physical and mental setbacks. In 1993, guardianship proceedings commenced and the trial court appointed attorney Joseph M. Cosgrove (Cosgrove) to represent Wood. In March of 1995, after the guardianship proceedings had been initiated, withdrawn and begun again, Cosgrove was named temporary guardian of the person of Wood and Walsh–Sukus was named temporary guardian of the estate of Wood. Three months later Wood died.[1] Thereafter, a second will and testament dated in

---

1. It is not clear from the record how the action for guardianship began. Because we have very little information about the guardianship proceedings, we have relied on the assertions of the parties, who appear to agree that the proceedings resulted in the appointments set out above.

May of 1991, (the 1991 Will) was offered for probate. The 1991 Will left all of Wood's estate to Walsh–Sukus and nothing to Zabroski.

¶ 4 Zabroski challenged the 1991 Will and filed suit, alleging that it was the product of undue influence by Walsh–Sukus. Zabroski sought to have the 1987 Will reinstated and insisted that her mother had suffered from a weakened intellect and lacked testamentary capacity to execute the 1991 Will. At a trial on the issues, Zabroski offered the testimony of friends and family members who described Wood's mental deterioration from 1989 forward. Zabroski also presented the expert testimony of Dr. Mark Novitsky (Novitsky), a psychiatrist and neurologist who examined Wood in 1994. Novitsky opined that Wood was profoundly cognitively impaired in 1994. He also testified that based on his review of her prior medical records, Wood suffered from a weakened intellect, was susceptible to influence and was without testamentary capacity at the time the 1991 Will was signed.

¶ 5 According to Walsh–Sukus, her mother's change of heart in 1991 was due to a dispute she had with Zabroski over jewelry Zabroski failed to return to her mother. With regard to Wood's mental fitness, Walsh–Sukus presented Wood's physicians, the attorney who drafted the 1991 Will and personnel from the facility at which Wood resided. All of these witnesses testified that although Wood had experienced some mental deterioration, she was functioning well in 1991 and was able to determine and articulate her wishes. Among these witnesses were Dr. David Owens (Owens) and Dr. Mitchell

Gross (Gross), both of whom had treated Wood in 1991.

¶ 6 The trial court ultimately found for Walsh–Sukus and denied Zabroski's claim of undue influence. However, on appeal, a panel of this court issued a memorandum opinion that reversed the judgment and awarded Zabroski a new trial. The basis for the reversal was that the expert testimony of Owens and Gross should not have been admitted because Walsh–Sukus had not provided Zabroski with expert reports prior to trial. Relying on Pa.R.C.P. 4003.5(c), the panel held that the doctors' testimony constituted unfair surprise, particularly since their trial testimony "was, to a troubling extent, inconsistent with [Wood's] medical records, including their [the doctors'] own contemporaneous clinical observations [noted in the records]." *In Re Estate of Wood,* No. 443 Harrisburg 1998, at 9, 745 A.2d 51 (filed June 29, 1999).

¶ 7 On remand, Walsh–Sukus sought to depose attorney Cosgrove in an effort to acquire information Cosgrove learned from Novitsky, who had testified on behalf of Zabroski at the prior trial, and other doctors Cosgrove interviewed while representing Wood in the guardianship proceedings.[2] Cosgrove refused to give such testimony and Walsh–Sukus filed a motion to compel. The trial judge granted the motion and entered an order requiring Cosgrove to give testimony at deposition or trial limited to the following areas of inquiry:

1. The names and addresses of all physicians with whom Cosgrove met and discussed Wood's medical treatment and/or conditions, the date upon which said meeting occurred, the substance of

---

**2.** In her brief, Walsh–Sukus alleges that Cosgrove's testimony and records "would reveal that Dr. Novitsky ... has given varying opinions as it relates to Catherine Wood's compe-

tency, testamentary capacity, etc." Appellee's Brief at 9. Apparently, Walsh–Sukus intends to utilize the information in order to impeach Novitsky at the re-trial.

any and all discussions held at each appointment with each physician, the number of reports obtained from each physician and copies of all such reports; and

2. The identity (names, addresses and telephone numbers) of any person, other than physicians with whom Attorney Cosgrove met, having knowledge of any discoverable matter with reference to any claim or defense of any party to the action.

*See* Trial Court Order dated 11/5/01.[3]

¶ 8 Cosgrove filed an appeal from the order, relying on the collateral order doctrine to validate his right of appellate review. *See* Pa.R.A.P. 313; *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Because Cosgrove's claims of privilege satisfy the requirements of the collateral order doctrine, the issue is ripe for appellate review. *See Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999) (permitting appeal from order mandating discovery of documents claimed to be privileged); *Dibble v. Penn State Geisinger Clinic, Inc.*, 806 A.2d 866 (Pa.Super.2002) (same). The issues raised involve questions of law and so we must decide whether the trial court erred as a matter of law in requiring Cosgrove to give testimony. *Gould v. City of Aliquippa*, 750 A.2d 934, 936 (Pa. Commw.2000).

¶ 9 Cosgrove asserts three bases for his challenge to the trial court's order: the attorney-client privilege, the work product doctrine and the duty of confidentiality a lawyer has to his client. We will address each separately to determine which, if any, apply to the items set out in the trial court's order.

¶ 10 "The attorney-client privilege has been a part of Pennsylvania law since the founding of the Pennsylvania colony, and has been codified in our statutory law." *Commonwealth v. Noll*, 443 Pa.Super. 602, 662 A.2d 1123, 1126 (1995), *appeal denied*, 543 Pa. 726, 673 A.2d 333 (1996). The relevant provision directs:

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928.

¶ 11 The attorney-client privilege, "one of the most revered of common law privileges," *Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327, 1333 (1986), exists to "foster a confidence between attorney and client that will lead to a trusting and open dialogue." *Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406, 423 (1999), *cert. denied*, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). While the attorney-client privilege is statutorily mandated, it has a number of requirements that must be satisfied in order to trigger its protections. First and foremost is the rule that the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services. *Slater v. Rimar, Inc.*, 462 Pa. 138, 148, 338 A.2d 584, 589 (1975); *Commonwealth v. duPont*, 730 A.2d 970, 977 (Pa.Super.1999), *appeal denied*, 561 Pa. 669, 749 A.2d 466 (2000).

¶ 12 In this case, none of the information sought by Walsh–Sukus constitutes confidential communications made by Wood to Cosgrove in the context of legal discussion. Rather the information requested consists of comments made and reports given by Wood's physicians to Cosgrove. The attorney-client privilege simply does not apply to such statements or

---

**3.** This is not the exact language of the court's order, but represents the substance of it.

documents. *In re Investigating Grand Jury*, 527 Pa. 432, 593 A.2d 402 (1991); *duPont, supra; Panko v. Alessi*, 362 Pa.Super. 384, 524 A.2d 930 (1987).

¶ 13 The attorney work product doctrine is set out in the Rules of Civil Procedure and appears as an exception to general discovery rules. It provides:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.Civ.P. 4003.3.

¶ 14 The underlying purpose of the work product doctrine is to shield "the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." *Lepley v. Lycoming County Court of Common Pleas*, 481 Pa. 565, 393 A.2d 306, 310 (1978). The doctrine "promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Commonwealth v. Noll*, 443 Pa.Super. 602, 662 A.2d 1123, 1126 (1995).

¶ 15 None of the items listed in the trial court's order appear to involve attorney Cosgrove's own "conclusions, opinions, memoranda, notes or summaries, legal research or legal theories" with the exception, perhaps, of that portion of the order calling for disclosure of the "substance of all discussions/meetings." With regard to the other information (the identities of the physicians or other persons with relevant information, the dates of the interviews and the reports provided), it appears plain that the work product doctrine does not apply and so cannot be relied upon by Cosgrove to defeat the trial court's order.

¶ 16 With regard to that part of the trial court's order calling for disclosure of the "substance" of any discussions between Cosgrove and various doctors, there exists a potential for including the type of information protected by the work product doctrine. It is true that the Explanatory Note to Rule 4003.3 explains that the doctrine falls in the event the attorney's conclusions and opinions "become[s] a relevant issue." Pa.R.Civ.P.4003.3 Explanatory Note. *See also Birth Center v. St. Paul Companies, Inc.*, 727 A.2d 1144 (Pa.Super.1999) (work product doctrine is not absolute and does not apply in an action alleging an insurer's bad faith in handling a third-party claim brought against its insured).

¶ 17 However, Walsh–Sukus has not asserted that Cosgrove's opinions or mental impressions are relevant in this case. Indeed, Walsh–Sukus proclaims in her brief that the only information she seeks is that which "the physicians stated in the form of verbal or written communications, and/or in a formal report." Appellee's Brief at 9. These relevant and discoverable materials, argues Walsh–Sukus, do not constitute the "mental impressions of Attorney Cosgrove, *but instead are either reports authored by physicians concerning Catherine Wood or are Attorney's verbatim transcription of physician statements.*" *Id.* at 14 (emphasis supplied).

¶ 18 We agree with Walsh–Sukus that her own limitations on material discoverable under the trial court order serve to establish that the attorney work product doctrine is not at issue here. Thus, Rule 4003.3 does not apply. To the extent that the trial court order may be read to include more than that which Walsh–Sukus seeks, we instruct the court on remand to limit interpretation of the order to the language set out in Walsh–Sukus's brief. Further, in the event Attorney Cosgrove is uncertain regarding what is discoverable under the order, we instruct the trial judge to review the material *in camera* to determine if protection under the work product doctrine is warranted.

■ ¶ 19 The final challenge to the trial court's order involves the Rules of Professional Conduct, which provide: "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation." R.P.C. 1.6 Confidentiality of Information. Pursuant to the Rule, Cosgrove asserts that he has a duty to keep confidential all information he acquired during the course of his representation of Wood.

■ ¶ 20 Cosgrove is correct when he states that a lawyer's duty of confidentiality to a client is quite extensive; the Rule's Comment explains that it "applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." Pa.R.P.C. 1.6 Comment. But the Rules of Professional conduct are not substantive law. *Commonwealth v. Chmiel,* 558 Pa. 478, 738 A.2d 406, 415 (1999). Rather, they address the bases for disciplinary proceedings against an attorney. They do not "govern or affect judicial application of either the attorney-client or work product privilege." *Id.* (relying on

the Scope of the Rules as set out in the Preamble).

¶ 21 The Comment to Rule 1.6 illustrates the manner in which the Rule interacts with substantive law:

The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. *The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.*

R.C.P. 1.6 Comment (emphasis supplied).

¶ 22 Cosgrove simply is not entitled to utilize Rule 1.6 in an effort to avoid the trial court's order. *See Chmiel supra* (rejecting a challenge based on Rule 1.6 that disclosures made by attorney were improper). Furthermore, Cosgrove would not be subject to disciplinary proceedings where he follows a court order requiring him to turn over information for purposes of discovery. *See also* R.P.C. Scope (recognizing that attorney's disclosure of confidential information may be judicially compelled in accordance with recognized exceptions to the attorney-client and work product privileges).

¶ 23 Because none of the reasons proffered by Cosgrove afford him the opportunity to shield the information sought, we find that the trial court correctly entered the order at issue in this case. Subject only to the instructions we have noted above, we affirm the order of the trial court.

¶ 24 Order affirmed; matter remanded. Jurisdiction relinquished.