COMMONWEALTH of Pennsylvania,
OFFICE OF OPEN RECORDS,
Petitioner

v.

CENTER TOWNSHIP, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 23, 2014.

Decided June 24, 2014.

Dena Lefkowitz, Chief Counsel, Harrisburg, for petitioner.

Michael D. Gallagher, Butler, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, BERNARD L. McGINLEY, Judge, BONNIE BRIGANCE LEADBETTER, Judge, RENÉE COHN JUBELIRER, Judge, P. KEVIN BROBSON, Judge, PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge McCULLOUGH.

Before the Court is a cross-motion for summary relief filed by the Office of Open Records (OOR) and Center Township (Township). Two issues of first impression are presented: whether the OOR has subject matter jurisdiction to determine if a document is exempt under the attorney-client privilege and/or work-product doctrine and whether the OOR has the statutory authority to conduct *in camera* review upon request by one of the parties. Answering both questions in the affirmative, we grant the OOR summary relief.

*Facts and Procedural History*

On May 13, 2013, Beverly Schenck (Requester) filed a request with the Township pursuant to the Right–to–Know Law (RTKL),[1] seeking solicitor's invoices for December 2012 through April 2013. The Township partially denied the request by redacting portions of the invoices that allegedly pertain to litigation services. On June 20, 2013, Requester appealed to the OOR and asked the OOR to conduct *in camera* review[2] of the invoices. In response, the Township submitted correspondence, stating that the redacted portions of the invoices concern the progress and avenues explored in litigation and litigation-related issues and, therefore, are exempt from disclosure under the attorney-client privilege or attorney work-product doctrine. (Joint Motion for Summary

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. According to Black's Law Dictionary, *in camera* review or inspection is defined as "[a] trial judge's private consideration of evidence." Black's Law Dictionary 828 (9th ed. 2004). The term *in camera* means: "1. In the judge's private chambers. 2. In a courtroom with all spectators excluded. 3. (Of a judicial action) taken when court is not in session-

Also termed (in reference to the opinion of one judge) *in chambers." Id.* One jurisdiction has differentiated *in camera* review from "expanded *in camera* review," defining the latter to mean a judge's review of evidence with counsel present. *Ehrlich v. Grove,* 396 Md. 550, 914 A.2d 783, 786 n. 3 (Ct.App.2007). For purposes of this appeal, we use both concepts within the term *"in camera* review" and/or *"in camera* inspection."

Relief, 1/29/2014, Statement of Undisputed Facts).

On July 25, 2013, the OOR directed the Township to provide a privilege log identifying each record withheld and explaining why a privilege applies to each redacted entry. The Township did not provide the OOR with a privilege log, instead asserting that the OOR is without authority or jurisdiction to make such a demand. Upon reviewing the record, the OOR determined that it could not properly adjudicate the dispute without assessing the records because there was no substantial evidence concerning the contents and description of the litigation services. On August 30, 2013, the OOR granted Requester's request for *in camera* review and directed the Township to produce for *in camera* inspection unredacted copies of all responsive records that the Township withheld. The Township did not comply, asserting that the OOR lacks statutory authority to compel and undertake an *in camera* review. The Township also argued that the OOR does not possess subject matter jurisdiction to review the documents and determine whether they are covered by the asserted privileges. *Id.*

On October 24, 2013, the OOR filed a Petition to Enforce Order in this Court, seeking an order compelling the Township to produce the records in unredacted form for *in camera* inspection. On January 14, 2014, President Judge Pellegrini entered an order referring the matter to a panel for review and directing the parties to submit a Joint Motion for Summary Relief. *Id.;* Order, 1/14/2014.

■ The parties have filed a Joint Motion for Summary Relief, containing a stipulation of undisputed facts, and legal briefs in support of their respective positions. This matter is now ripe for disposition.[3]

*Whether the OOR has Subject Matter Jurisdiction to Determine if a Document is Exempt under the Attorney–Client Privilege or Work–Product Doctrine*

Relying predominately on *City of Pittsburgh v. Silver*, 50 A.3d 296 (Pa.Cmwlth. 2012) (*en banc*),[4] the Township contends that the OOR does not possess subject matter jurisdiction to determine whether the attorney-client privilege or work-product doctrine applies because this power is within the exclusive authority of the Supreme Court. According to the Township, the attorney-client privilege and work-product doctrine are governed by Pennsylvania Rule of Professional Conduct (Pa. R.P.C.) 1.6, and "the OOR's order to [the Township] is but a vain attempt by an agency of the Legislature to interpose itself into the role of the judiciary and exercise a power which it does not hold." (Brief for the Township at 16.)

The OOR argues that it has subject matter jurisdiction to assess whether records are subject to the attorney-client privilege and the attorney work-product doctrine. For support, the OOR cites cases decided *post-Silver* where the OOR adjudicated disputes involving the attorney-client privilege, as well as other privileges, and this Court addressed the merits

---

**3.** "A motion for summary relief may be granted only where no material fact is in dispute and the right of the moving party to relief is clear." *Bussinger v. Department of Corrections*, 29 A.3d 79, 81 (Pa.Cmwlth.2011).

**4.** In *Silver,* the requester submitted a request seeking correspondence contained in the file

of an assistant city solicitor concerning settlement negotiations between the city officials and the estate of a deceased person. As explained in more detail below, a majority of this Court concluded that this information could not be disclosed.

of the appeals without questioning the OOR's subject matter jurisdiction. The OOR proposes that *Silver's* holding is extremely narrow and emphasizes that it is not ordering the disclosure of documents related to settlement negotiations in an attorney's case file, and, consequently, is not encroaching upon the Supreme Court's exclusive power.[5]

### Discussion

■ The objective of the RTKL "is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 615 Pa. 640, 45 A.3d 1029, 1042 (2012). Pursuant to section 305 of the RTKL, a record in the possession of a local agency, like the Township in this case, shall be presumed to be a public record, unless: the record is exempt under section 708 of the RTKL; the record is protected by a privilege; or the record is exempt from disclosure under any other Federal or State law or regulation or judicial order. 65 P.S. § 67.305. The RTKL defines the term "privilege" to include "[t]he attorney-work product doctrine, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth." Section 102 of the RTKL, 65 P.S. § 67.102 (defining "privilege").

It is the local agency's burden to prove, by a preponderance of the evidence, that a record is exempt from public access on the basis that the record contains privileged material. Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1); *Department of Transportation v. Drack*, 42 A.3d 355, 364 (Pa.Cmwlth.2012) ("[T]he RTKL places an evidentiary burden upon agencies seeking to deny access to records even when a

privilege is involved."). In appeals to the OOR, the RTKL charges an OOR appeals officer with the obligation of determining whether an agency has met its burden of proof. Section 1101(b)(1) of the RTKL, 65 P.S. § 67.1101(b)(1) ("[T]he appeals officer shall make a final determination"). Because the RTKL "is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions, the exemptions from disclosure must be narrowly construed." *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa.Cmwlth.2010) (*en banc*), *aff'd*, 621 Pa. 133, 75 A.3d 453 (2013).

In *Silver*, the requester submitted a request under the RTKL seeking copies of all correspondence contained in the file of an assistant city solicitor between attorneys for the estate of a deceased person and city officials regarding efforts to negotiate the settlement of pending litigation with respect to the decedent's death. The city denied the request, asserting, among other things, that the documents were protected by the attorney-client privilege and the work-product doctrine. The requester filed an appeal to the OOR, which sustained the appeal and ordered that the documents be disclosed. On further appeal, a trial court affirmed the OOR, concluding that none of the documents were covered by the asserted privileges.

The city then filed an appeal to this Court. Instead of determining whether the documents were protected under the attorney-client and/or work-product privileges, this Court concluded, *sua sponte*, that the OOR lacked subject matter jurisdiction "under the RTKL to compel the disclosure of the documents in the associ-

---

**5.** The Pennsylvania Newsmedia Association has filed an *amicus curiae* brief in support of

OOR's position, elaborating, to a minimal degree, on the arguments made by the OOR.

ate solicitor's file relating to the pending litigation." 50 A.3d at 299 & n. 9.

In so holding, this Court in *Silver* highlighted Article V, Section 10(c) of the Pennsylvania Constitution,[6] which has been interpreted as vesting in the Supreme Court the exclusive power to govern the conduct of attorneys practicing law in this Commonwealth. This Court then opined that the Supreme Court's regulatory authority involves the conduct of litigation and necessarily extends to a lawyer's efforts to settle litigation. On this foundation, we opined:

> Allowing anyone to make ongoing requests under the RTKL concerning all correspondence regarding settlement impermissibly intrudes into the conduct of litigation because it would lessen the frank exchange of information between the parties thereby adversely affecting the ability for litigation to settle. Moreover, the conduct of litigation could be affected because other parties to the litigation could constantly seek information about settlement discussions to discern the other parties' belief as to the strength or weakness of their case. Allowing an administrative agency to order the release of documents would interfere with the courts' sole control over the conduct of litigation.

50 A.3d at 300 (footnote omitted).

Next, this Court in *Silver* looked to Pa. R.P.C. 1.6(a), which was promulgated by the Supreme Court pursuant to its constitutional power under Article V, Section 10(c). In pertinent part, this disciplinary rule states that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation...." In addition, comment 3 to Pa.R.P.C. 1.6(a) provides:

> The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics. The attorney-client privilege and work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law....

*Silver,* 50 A.3d at 300 (quoting Pa.R.P.C. 1.6 cmt. (3)).

Finding further support in Pa.R.P.C. 1.6 and comment 3, this Court concluded:

> Because the Supreme Court regulates the release of any information relating to the representation of a client under Pa.R.P.C. 1.6(a), including a proposed settlement agreement, any provision of the RTKL that purports to require such disclosure again unconstitutionally infringes upon the Supreme Court's exercise of its authority under Article V, Section 10(c) of the Pennsylvania Constitution ...
>
> Because our Supreme Court has sole jurisdiction over the practice of law, the

6. Article V, Section 10(c) of the Pennsylvania Constitution states that "[t]he Supreme Court shall have the power to prescribe general rules ... for admission to the bar and to practice law." Pa. Const. art. V, § 10(c).

RTKL could not confer upon a hearing officer or the OOR the authority to compel the disclosure of information in an attorney's case file, including settlement negotiations....

50 A.3d at 301. Accordingly, this Court in *Silver* reversed the trial court's order and vacated the order of the OOR.[7]

Upon review, we conclude that *Silver's* holding cannot reasonably be extended to deprive the OOR of subject matter jurisdiction to determine, as a threshold matter, whether documents are privileged and exempt from disclosure under the RTKL.

Although there is broad language in *Silver* commenting on an expansive legal principle (the rule of confidentiality), it is important to read *Silver* against its unique facts and procedural history.[8] In *Silver*, this Court declined to determine whether the OOR or the trial court erred in concluding that the settlement negotiations at issue were covered under the attorney-client privilege or the work-product doctrine. Presumably, we did so because the settlement negotiations involved discussion with third parties and did not reflect the solicitor's legal impressions and, therefore, were not protected under either privilege. *See Joe v. Prison Health Services*, 782 A.2d 24, 31 (Pa.Cmwlth.2001) ("[O]nce the attorney-client communications have been disclosed to a third party, the privilege is deemed waived."); Pa.R.C.P. No. 4003.3 (stating that under the work product doctrine "discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories.").[9] Instead, this Court focused on Pa.R.P.C. 1.6 and its embodiment of the rule of confidentiality

---

**7.** *But see In re Estate of Wood*, 818 A.2d 568, 573 (Pa.Super.2003) ("[T]he Rules of Professional conduct are not substantive law. Rather, they address the bases for disciplinary proceedings against an attorney. They do not govern or affect judicial application of either the attorney-client or work product privilege.... [The attorney] simply is not entitled to utilize Rule 1.6 in an effort to avoid the trial court's [discovery] order. Furthermore, [the attorney] would not be subject to disciplinary proceedings where he follows a court order requiring him to turn over information for purposes of discovery.") (citations and internal quotation marks omitted).

In *Silver*, this Court split 4 to 3 on the issue of whether the OOR lacked subject matter jurisdiction to order disclosure of the documents at issue. The OOR does not request that this Court revisit or overrule *Silver*.

**8.** *See Oliver v. City of Pittsburgh*, 608 Pa. 386, 11 A.3d 960, 965–66 (2011) ("[T]he fact that some decisions of the Court apply loose language cannot mean that the Court must always do so going forward, as this would institutionalize an untenable slippage in the law. *Accord Schering–Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir.2009) (explaining that "uncritical generalization is a path to error" and that

"[o]ne form of uncritical generalization ... is reading general language literally."). Indeed, various principles governing judicial review protect against such slippage, including the axiom that the holding of a judicial decision is to be read against its facts.")

**9.** "The attorney-client privilege exists to foster a confidence between attorney and client that will lead to a trusting and open dialogue. While the attorney-client privilege is statutorily mandated, it has a number of requirements that must be satisfied in order to trigger its protections. First and foremost is the rule that the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services." *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1062 (Pa.Super.2008) (citation omitted); *see* section 5928 of the Judicial Code, 42 Pa.C.S. § 5928 (codifying attorney-client privilege). On the other hand, "[t]he underlying purpose of the work-product doctrine is to shield the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. The doctrine promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Elwyn, Inc.*, 950 A.2d at 1062 (citation omitted).

established in professional ethics. Significantly, the ethics-based rule of confidentiality provides protection to a wider scope of client information than is afforded by the attorney-client privilege and work-product doctrine in that it "applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." Pa.R.P.C. 1.6.[10] Although the RTKL specifically shields from disclosure information covered under the attorney-client privilege and the work-product doctrine, see 65 P.S. § 67.102 (defining "privilege"), both of which are referenced in Pa.R.P.C. 1.6, the RTKL does not have a counterpart provision embodying the ethics-based rule of confidentiality that is otherwise covered under Pa.R.P.C. 1.6. At its core, then, the issue in *Silver* concerned a clash between the RTKL, which permits disclosure of information protected by the ethics-based rule of confidentiality, and Pa.R.P.C. 1.6, which prohibits such disclosure. It is against this backdrop, and the fact that disclosure of the settlement negotiations violated the ethics-based rule of confidentiality, that this Court concluded, *sua sponte*, that our Supreme Court's authority under Article V, Section 10(c) trumped the RTKL's requirement that the documents should be disclosed and that the OOR lacked subject matter jurisdiction to order disclosure.

 When its holding is understood in context, *Silver* stands for the limited proposition that the RTKL cannot mandate and the OOR cannot order the disclosure of settlement documents when that disclosure would contravene the ethics-based rule of confidentiality in Pa.R.P.C. 1.6. In essence, *Silver* created an exception to disclosure under the RTKL as a matter of judicial precedent, excluding from disclosure a category of ethics-based confidential communications that the RTKL does not expressly exempt. And, while *Silver* couches its holding in terms of subject matter jurisdiction, this language was employed to denote that the OOR lacks the power/authority to order disclosure because the Supreme Court has the exclusive authority to regulate the practice of law and promulgated Pa.R.P.C. 1.6.[11] Apart from this narrow focus, there is nothing in *Silver* that purported to restrict or otherwise question the OOR's subject matter jurisdiction as it pertains to the OOR's basic adjudicatory functions or ability to interpret and apply provisions of the RTKL.

In several cases decided post-*Silver*, this Court has reviewed the OOR's determina-

**10.** See Pa.R.P.C. 1.6 cmt. 4 ("This prohibition also applies to disclosures by a lawyer that do not in themselves reveal protected information but could reasonably lead to the discovery of such information by a third person."); Schenck v. Township of Center, 893 A.2d 849, 854 (Pa.Cmwlth.2006), *appeal dismissed as improvidently granted by* 601 Pa. 548, 975 A.2d 591 (2009) (recognizing the breadth of the ethics-based duty of confidentiality in Pa. R.P.C. 1.6); In re Estate of Wood, 818 A.2d 568, 577–73 (Pa.Super.2003) (differentiating between the attorney-client privilege, work-product doctrine, and the "quite extensive" ethical duty of confidentiality in Pa.R.P.C. 1.6).

**11.** As our Supreme Court explained:

Jurisdiction and power are not interchangeable although judges and lawyers often confuse them—*Hellertown Borough Referendum Case*, 354 Pa. 255, 47 A.2d 273 (1946). Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

*Riedel v. Human Relations Commission of Reading*, 559 Pa. 34, 739 A.2d 121, 124 (1999) (quoting *Delaware River Port Auth. v. Pennsylvania Public Utility Commission*, 408 Pa. 169, 182 A.2d 682, 686 (1962)).

tions regarding attorney-client and work-product privileges without perceiving a subject-matter jurisdiction problem based upon the Supreme Court's constitutional authority. For example, in *Heavens v. Pennsylvania Department of Environmental Protection*, 65 A.3d 1069 (Pa. Cmwlth.2013), this Court concluded that the OOR properly determined that the Department of Environmental Protection (DEP) met its burden of proving that the attorney-client privilege applied by submitting affidavits establishing that the records contained "communications made to and by DEP counsel for the purpose of providing professional legal advice concerning legal issues arising out of DEP's investigation of [a] well site fire." *Id.* at 1076–77. We further concluded that DEP met its burden of proving that other documents were protected by the work-product doctrine by submitting privilege logs and affidavits, which demonstrated that the documents "reflected counsel's opinions concerning DEP's legal actions following the well fire." *Id.* at 1077.

In *Dages v. Carbon County*, 44 A.3d 89 (Pa.Cmwlth.2012), this Court affirmed the determinations of the OOR and the trial court that Carbon County, through affidavits detailing that the requested information sought documents containing confidential legal advice, established that the documents were protected by the attorney-client privilege; because the requested documents fell within the attorney-client privilege, this Court deemed it unnecessary to decide whether they also qualified as attorney work-product. *Id.* at 93 & n. 4. In *Drack*, this Court concluded that the

Department of Transportation waived any claim that it may have had regarding the attorney-client privilege because it failed to assert this privilege in its final response and, therefore, we ordered that the documents be disclosed. 42 A.3d at 365, *rev'd in part by Levy v. Senate of Pennsylvania*, 619 Pa. 586, 65 A.3d 361, 383 (2013) (overruling the waiver rule enunciated in *Signature Information Solutions, LLC v. Aston Township*, 995 A.2d 510 (Pa. Cmwlth.2010) and relying upon in *Drack*.).

▆▆▆ In any event, when it comes to a particular legal dispute, "[j]urisdiction over the subject matter is conferred solely by the Constitution and laws of the Commonwealth." *In re Administrative Order No. 1–MD–2003, Appeal of Troutman*, 594 Pa. 346, 936 A.2d 1, 5 (2007). When the Legislature enacted the RTKL, it incorporated provisions that explicitly conferred subject matter jurisdiction with the OOR to decide requests under the RTKL that were denied by an agency. Section 1310(a)(5) of the RTKL, 65 P.S. § 67.1310(a)(5) (stating that the OOR shall "[a]ssign appeals officers to review appeals of decisions by Commonwealth agencies or local agencies"); section 1102(a)(4) of the RTKL, 65 P.S. § 67.1102(a)(4) (stating that an appeals officer shall "[i]ssue a final determination on behalf of the [OOR]").[12] *See Department of Labor and Industry v. Heltzel*, 90 A.3d 823, 828 (Pa.Cmwlth.2014) (*en banc*) ("The RTKL thus vests [the] OOR with jurisdiction over challenges to the public nature of records in possession of a Commonwealth agency."). Per well-settled case law, the OOR maintains this

---

12. "However, judicial agencies, legislative agencies, the Attorney General, State Treasurer, and Auditor General (all Commonwealth agencies); and the district attorneys of each county (all local agencies), shall designate their own appeals officers to hear appeals from the respective agency's determinations.

[Section 503(a)-(d) of the RTKL,] 65 P.S. § 67.503(a)-(d). Thus, appeals from final determinations of these ... agencies are not heard by the OOR." *Bowling v. Office of Open Records*, 621 Pa. 133, 75 A.3d 453, 457 (2013).

subject matter jurisdiction to adjudicate RTKL disputes even where, as in *Silver*, the OOR ultimately lacks the power or authority, for whatever reason, to order the disclosure of documents. *Riedel v. Human Relations Commission of Reading*, 559 Pa. 34, 739 A.2d 121, 124–25 (1999) (collecting and discussing cases for the proposition that an administrative agency maintains subject matter jurisdiction even if it does not have the power or authority to grant the relief requested); *Beltrami Enterprises, Inc. v. Department of Environmental Resources*, 159 Pa. Cmwlth. 72, 632 A.2d 989, 993 (1993), *petition for allowance of appeal denied*, 538 Pa. 615, 645 A.2d 1318 (1994) (concluding that whether or not an administrative agency has the power to afford relief in a particular case is irrelevant to determining whether that agency has general subject matter jurisdiction over the controversy).

■ Accordingly, we conclude that the OOR possesses subject matter jurisdiction to apply the provisions of the RTKL and decide whether a request falls within the ambit of the attorney-client privilege, the work-product doctrine, and/or the ethics-based rule of confidentiality. In so holding, we note that in other administrative arenas, the agency in charge of ruling on the underlying matter has rendered determinations as to whether the attorney-client privilege and/or work-product doctrine are applicable, at times pursuant to regulations that incorporate the privileges. *See, e.g., Pennsylvania State University v. Workers' Compensation Appeal Board (Sox)*, 83 A.3d 1081, 1092–93 & n. 15 (Pa. Cmwlth.2013) (attorney-client and work-product); *Department of Military and Veteran Affairs v. Civil Service Commission (Korenyi–Both)*, 719 A.2d 1134, 1138–39 (Pa.Cmwlth.1998) (attorney-client privilege); *Okum v. Unemployment Compensation Board of Review*, 77 Pa.Cmwlth.

386, 465 A.2d 1324, 1325 (1983) (attorney-client privilege).

In addition, and notwithstanding *Silver*, we reject the Township's assertion that the OOR's actions in applying the RTKL and determining if a request is protected by the above privileges encroach upon the Supreme Court's authority under Article V, Section 10(c) of the Pennsylvania Constitution. These privileges are already defined by statute and rules, and the OOR is merely tasked with interpreting their contours pursuant to the RTKL as a quasi-judicial agency possessing administrative expertise in the area of document disclosure. Indeed, Pa.R.P.C. 1.6 envisions that administrative agencies will determine whether information is privileged and order disclosure in accordance with a statutory directive. Specifically, comment 21 to Pa.R.P.C. 1.6 states that "[a] lawyer may be ordered to reveal information relating to the representation of a client by a court *or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure.*" Pa. R.P.C. 1.6 cmt. 21 (emphasis added).

A "tribunal" is defined in section 102 of the Judicial Code as including "a government unit, other than the General Assembly and its officers and agencies, when performing quasi-judicial functions." 42 Pa.C.S. § 102. Although the word "quasi-judicial" is "not easily definable," Black's Law Dictionary 1364 (9th ed. 2004), "quasi-judicial" has been thoroughly described as "[a] term applied to the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." Black's Law Dictionary 1245 (6th ed. 1990). This Court has held that the OOR is "a quasi-judicial tribunal."

*Pennsylvania State Education Association v. Department of Community and Economic Development, Office of Open Records,* 4 A.3d 1156, 1164 (Pa.Cmwlth. 2010), *vacated on other grounds by* 616 Pa. 491, 50 A.3d 1263 (2012). Yet, Pa.R.P.C. 1.6 does not prohibit the OOR or any other administrative agency from rendering decisions with respect to the attorney-client or work-product privileges, and the RTKL compels the disclosure of information that is determined to be outside the rubric of these privileges. In this context, comment 21 to Pa.R.P.C. 1.6 simply advises an attorney to assert the applicability of the privilege before the administrative agency and consult with the client regarding an appeal if there is an adverse determination at the administrative level. Pa.R.P.C. 1.6 cmt. 21.

Further, Article V, section 9 of the Pennsylvania Constitution [13] guarantees the right to appeal from agency adjudications and "was intended to grant access to courts for the review of agency adjudications." *Mercury Trucking, Inc. v. Pennsylvania Public Utilities Commission,* 618 Pa. 175, 55 A.3d 1056, 1074 (2013). This constitutional proviso "introduced a new concept to Pennsylvania jurisprudence, one which recognized the important position of administrative agencies in modern government, the quasi-judicial functions that many of them perform, and the fact that both property rights and personal rights can be seriously affected by their decisions." *Rogers v. Pennsylvania Board of Probation & Parole,* 555 Pa. 285, 724 A.2d 319, 321–22 (1999). In *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791, 793 (1977), the Supreme Court held that:

[w]hen the Legislature has seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise ... to administer that statutory scheme, a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency. Full utilization of the expertise derived from the development of various administrative bodies would be frustrated by indiscriminate judicial intrusions into matters within the various agencies' respective domains.

*Id. See also Beltrami Enterprises,* 632 A.2d at 991 (Pa.Cmwlth.1993) (stating that "[t]he Doctrine of Primary Jurisdiction allows a court to defer judicial action until an administrative agency has passed upon such aspects of a proceeding as may lie with the agency's competence and expertise. The purpose of the doctrine is to create a workable relationship between the courts and administrative agencies wherein ... the courts can have the benefit of the agency's views on issues within the agency's competence.").

Consistent with Article V, section 9 of the Pennsylvania Constitution, section 1302(a) of the RTKL grants a requester and an agency *the right to appeal from a final determination of the OOR, and automatically stays a final determination* ordering the release of records until the OOR's determination is reviewed and decided by a court of common pleas. Specifically, section 1302 of the RTKL states:

**Section 1302. Local agencies.**

(a) General rule.—Within 30 days of the mailing date of the final determination

---

**13.** "There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law." Pa. Const. art. V, § 9.

of the appeals officer relating to a decision of a local agency issued under section 1101(b) or of the date a request for access is deemed denied, a requester or local agency may file a petition for review or other document as required by rule of court with the court of common pleas for the county where the local agency is located. The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole. The decision shall clearly and concisely explain the rationale for the decision.

(b) Stay.—A petition for review under this section *shall stay the release of documents* until a decision under subsection (a) is issued.

65 P.S. § 67.1302 (emphasis added). This same stay procedure applies to appeals from the OOR to this Court in matters involving certain Commonwealth agencies. Section 1301 of the RTKL, 65 P.S. § 67.1301. Therefore, the Township's argument that the OOR will release the documents to the requester/public after it issues a determination, and that the Township will have no effective appellate recourse once the OOR discloses privileged material, is unfounded and runs contrary to section 1302 of the RTKL.

Given that Pa.R.P.C. 1.6 does not bar administrative determinations regarding confidential communications; the OOR engages in quasi-judicial functions; there exists a right to appeal from the OOR to a court of the judiciary; and the OOR's determination is stayed pending disposition of that appeal, this Court concludes that the OOR's involvement in the RTKL process does not implicate, much less infringe upon, the Supreme Court's exclusive authority to govern the conduct of attorneys practicing law in this Commonwealth. Accordingly, we conclude that when the OOR exercises subject matter jurisdiction and

determines whether a request is covered by the attorney-client privilege, the work-product doctrine, or the ethics-based rule of confidentiality, the OOR does not infringe upon the Supreme Court's authority under Article V, Section 10(c). Pursuant to *Silver*, it is error for the OOR to order disclosure of documents that contravene the ethics-based rule of confidentiality. However, *Silver* does not preclude the OOR from deciding, in the first instance, whether any of the privileges enunciated in the RTKL or the ethics-based rule of confidentiality in Pa.R.P.C. 1.6 are applicable.

For these reasons, this Court concludes that there is no jurisdictional or constitutional impediment that would prohibit the OOR from analyzing documents and determining whether they fulfill the requirements necessary to be considered privileged documents for purposes of the RTKL.

*Whether the OOR has the Statutory Authority to Conduct In Camera Review to Ascertain whether Redactions are Proper under the Attorney–Client Privilege and/or the Attorney Work–Product Doctrine*

The Township argues that there is no provision in the RTKL that expressly grants the OOR the right to conduct *in camera* review and contends that this Court cannot rewrite the RTKL to supply such a provision. The Township also argues that the OOR does not have implied authority, asserting that the Legislature never intended to delegate the power to undertake *in camera* review to the OOR because proposed Senate Bill No. 444, (Brief for the Township at App.), suggested that a section be added to the RTKL for the purpose of permitting the OOR to conduct *in camera* review and was not adopted. The Township further contends that it is not reasonable to infer that the OOR has such authority because the

RTKL only authorizes the OOR to review documents that are voluntarily submitted.

The OOR argues that section 1102 of the RTKL [14] and accompanying case law vest it with significant fact-finding powers and the obligation to develop an adequate evidentiary record for reviewing courts. The OOR claims that this Court has held that we have the authority to conduct *in camera* review and assumed that the OOR has the same authority in order to develop a record and render a reasoned decision. Further, the OOR maintains that it expects an agency to meet its burden of proof under the RTKL and that *in camera* review is necessary where, as here, the record is undeveloped, thereby depriving the OOR of the opportunity to determine whether a privilege is, in fact, applicable. For these reasons, the OOR argues that it has implied authority under the RTKL to perform *in camera* inspection when the circumstances warrant it.

The OOR also contends that the Township's reliance on proposed Senate Bill No. 444 is misplaced. The OOR points to the accompanying Co–Sponsorship Memorandum, which states that the purpose of the legislation was to simply "clarify that the ORR may conduct *in camera* record re-

views," (Brief for the OOR at Ex. A.), and not to grant the OOR with authority that it never had in the first place.

The availability and the benefits of conducting *in camera* review with respect to a request under the RTKL or its predecessor, the Right to Know Act of 1957 (Right to Know Act),[15] have been discussed by this Court and our Supreme Court. As early as 2001, when analyzing the Right to Know Act, our Supreme Court stated, albeit in *dicta*, "that sound policy would appear to support the availability of an *in camera* procedure, where appropriate, and perhaps, in some circumstances, its requirement upon proper demand." *LaValle v. Office of General Counsel,* 564 Pa. 482, 769 A.2d 449, 459 n. 14 (2001). Later, in a dissenting statement from the dismissal of an appeal as improvidently granted, Justice Saylor, joined by Chief Justice Castille, opined as follows:

As to the availability of *in camera* review, I agree with the many jurisdictions that have had little difficulty recognizing the availability of such a procedure in the discovery and public disclosure arenas. *Accord LaValle,* 769 A.2d at 459 n. 14 ("We note ... that sound policy

---

14. This provision states:

**Section 1102. Appeals officers.**
(a) Duties.—An appeals officer designated under section 503 shall do all of the following:
(1) Set a schedule for the requester and the open-records officer to submit documents in support of their positions.
(2) Review all information filed relating to the request. The appeals officer may hold a hearing. A decision to hold or not to hold a hearing is not appealable. The appeals officer may admit into evidence testimony, evidence and documents that the appeals officer believes to be reasonably probative and relevant to an issue in dispute. The appeals officer may limit the nature and extent of evidence found to be cumulative.

(3) Consult with agency counsel as appropriate.
(4) Issue a final determination on behalf of the Office of Open Records or other agency.
65 P.S. § 67.1102(a). In addition, the OOR may "adopt procedures relating to appeals," section 1102(b) of the RTKL, 65 P.S. § 67.1102(b), but "[i]n the absence of a regulation, policy or procedure governing appeals ... the appeals officer shall rule on procedural matters on the basis of justice, fairness and the expeditious resolution of the dispute." Section 1102(b)(3) of the RTKL, 65 P.S. § 67.1102(b)(3).

15. Act of June 21, 1957, P.L. 390, *formerly* 65 P.S. §§ 66.1–66.9, repealed by Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

would appear to support the availability of an *in camera* procedure, where appropriate[.]"). Having charged the courts with the obligation to render reasoned decisions in the right-to-know setting, I do not believe that the Legislature intended to deprive them of an accepted, and perhaps essential, tool of judicial review. I also agree, however, with the observation that *in camera* review may not be required where the government agency otherwise provides a sufficient basis for meaningful review and independent assessment. *See, e.g.,* [*City of Colorado Springs v. White,* 967 P.2d 1042, 1054 (Colo.1998) ] ("An in camera inspection of the disputed material need not automatically follow upon the claim of privilege.").

*Schenck v. Township of Center, Butler County,* 601 Pa. 548, 975 A.2d 591, 599 (2009) (Saylor, J. dissenting from dismissal of appeal as improvidently granted, joined by Castille, C.J.) (footnote 11 omitted). While Justice Saylor recognized that *Schenck* was decided under the old Right to Know Act, he expressed the view that his analysis was equally applicable to the current RTKL. *Id.* at n. 1.[16]

More recently, this Court in *Bowling* observed that the current RTKL "does not expressly restrain a court from ... an *in camera* review of the documents at issue" and acknowledged "that several recent appellate decisions suggest that a court's *in camera* review of public records sought under the former [Right to Know Act] is permissible." 990 A.2d at 820–21 (collecting cases). Likewise, in *Levy v. Senate,* 34 A.3d 243, 246 (Pa.Cmwlth.2011), *aff'd in part and reversed in part on other grounds by* 619 Pa. 586, 65 A.3d 361 (2013), this Court cited case law for the proposition that *in camera* review provides an essential check against the possibility that a privilege may be abused. *Id.* In *Levy,* we ordered a party to produce "unredacted records for *in camera* judicial review," and a senior judge of this Court, acting as a special master, inspected the documents *in camera* to determine whether they fell within the attorney-client privilege. *Id.* Ultimately, our decisions in *Bowling* and *Levy* unmistakably held that this Court has the authority under the RTKL to conduct *in camera* review.

In *Office of the Governor v. Bari,* 20 A.3d 634, 648 (Pa.Cmwlth.2011), a case

---

**16.** Moreover, in the context of discovery in civil matters, the Superior Court has consistently held that *in camera* review is a vital means by which to analyze whether a document is covered under a privilege. *See, e.g., T.M. v. Elwyn, Inc.,* 950 A.2d 1050, 1063 (Pa.Super.2008) (stating that the "court may conduct *in camera* review of documents identified [ ] to be subject to a privilege, to better analyze the privilege issues, as needed."); *Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1223 (Pa.Super.2003) (concluding that given the record as it existed on appeal, remand was necessary for the trial court to review discovery requests in light of the privileges raised by the plaintiff and that "[i]n some instances, *in camera* review may be required."); *In re Estate of Wood,* 818 A.2d 568, 573 (Pa.Super.2003) ("[W]e instruct the trial judge to review the material *in camera* to

determine if protection under the work product doctrine is warranted."); *McGovern v. Hospital Service Association,* 785 A.2d 1012, 1018 (Pa.Super.2001) ("While it remains to be seen if indeed the underlying materials fall under the protection of the attorney-client privilege, the trial court at the very least must conduct an *in camera* inspection of the documents to determine this contention.").

As Justice Saylor stated: "I would not accept the Township's argument that the differences between the discovery and right-to-know settings justifies differential treatment of privilege matters. In my view, the salutary purposes underlying the Right to Know Act are no less important than those pertaining to the civil-practice discovery scheme." *Schenck,* 975 A.2d at 598 (Saylor, J. dissenting from dismissal of appeal as improvidently granted, joined by Castille, C.J.)

where records were sought to be exempt as "confidential proprietary information" and/or "trade secret" information under the RTKL,[17] this Court stated that the "OOR should take all necessary precautions, such as conducting a hearing or performing *in camera* review, before providing access to information which is claimed to reveal 'confidential proprietary information' under [s]ection 708(b)(11) of the RTKL." 20 A.3d at 648. We also questioned the OOR's "reluctance to conduct hearings or to perform *in camera* review of the subject records in this type of proceeding." *Id.* Similarly, in an unpublished decision from an *en banc* panel of this Court, *Harrisburg Area Community College v. Office of Open Records*, 2011 WL 10858088 (Pa.Cmwlth., No. 2110 C.D.2009, filed May 17, 2011), slip op. at 17–18, upon request by the Harrisburg Area Community College (HACC) for this Court to conduct a hearing and accept new evidence, a majority of this Court vacated an order requiring disclosure under the "public safety" exemption[18] and remanded the matter to the OOR for further proceedings. In doing so, the majority noted that this Court could not discern from the record whether HACC had notice that it could have requested a hearing, and we instructed the OOR that it "has a responsibility to develop a fuller record using the means granted to it in the RTKL, such as conducting a hearing or examining the subject records *in camera* . . . ." *Id.*[19]

The above endorsements of *in camera* review are supported by provisions of the RTKL as well as the nature of the OOR's task to review and determine whether records are, in fact, protected by a privilege.

The RTKL requires that the appeals officers of the OOR be attorneys who receive special training in order to serve in such capacity. Section 1310(a)(5) of the RTKL, 65 P.S. § 67.1310(a)(5). Under the RTKL, an OOR appeals officer is required to "[r]eview all information filed relating to the request." Section 1102(a)(2) of the RTKL, 65 P.S, § 67.1102(a)(2). The appeals officer "may hold a hearing" and "may admit into evidence testimony . . . and documents that the appeals officer

---

17. *See* section 708(b)(11) of the RTKL, 65 P.S. § 67.708(b)(11) (exempting from disclosure "[a] record that constitutes or reveals a trade secret or confidential proprietary information.").

18. *See* section 708(b)(2) of the RTKL, 65 P.S. § 67.708(b)(2) (exempting from disclosure "[a] record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.").

19. In *Harrisburg Area Community College*, where HACC requested this Court to conduct a hearing to take new evidence, this author wrote a concurring opinion, noting that section 1101(b)(3) of the RTKL gives ample notice that a hearing may be conducted by the OOR and disagreed with the majority's implication that the OOR must notify parties of such. Because HACC demonstrated the existence of a material question regarding the "public safety" exemption, this author concluded that the matter could only be resolved by a hearing or *in camera* review and a remand to the OOR was appropriate. *Id.* (McCullough, J. concurring), op. at 356–57. In *Office of the Governor v. Scolforo*, 65 A.3d 1095 (Pa.Cmwlth.2013) (*en banc* ), this author noted that section 1101(b)(3) of the RTKL makes clear that the OOR has discretion to conduct a hearing, and declined to do so even though a hearing was requested, but there is no similar provision in the RTKL granting the OOR the authority to conduct *in camera* review *sua sponte*. *Id.* at 1105 (McCullough, J. concurring). The issue of such *sua sponte* authority is not present in this appeal because Requester specifically requested that the OOR conduct *in camera* inspection.

believes to be reasonably probative and relevant to an issue in dispute." *Id.* In addition, the OOR can "adopt procedures relating to appeals." Section 1102(b) of the RTKL, 65 P.S. § 67.1102(b)(2). To date, the OOR has not done so,[20] and "[i]n the absence of a regulation, policy or procedure governing appeals ... the appeals officer shall rule on procedural matters on the basis of justice, fairness and the expeditious resolution of the dispute." Section 1102(b)(3) of the RTKL, 65 P.S. § 67.1102(b)(3). Finally, an appeals officer must issue a final determination on the matter within 30 days and provide a written explanation of the reason for the decision. Section 1101(b)(1), (3) of the RTKL, 65 P.S. § 67.1101(b)(1), (3).[21]

▮▮▮▮ "Although the RTKL grants appeals officers wide discretion with respect to [the] procedure [for deciding appeals], there appears to be little 'discretion' concerning whether a document may or may not be released to a requester. Either the document falls under one of the specific exemptions, or it is a document that must be released." *Bowling v. Office of Open Records*, 621 Pa. 133, 75 A.3d 453, 467 (2013). Nonetheless, "the RTKL contemplates that the foundational question of whether a record or document is exempt from disclosure is a factual one," *id.* at 476, that should be made in the first instance by an appeals officer. While a court of common pleas or this Court (collectively, "reviewing courts") may conduct *de novo*, plenary review of appeals from decisions made by appeals officers, there is "nothing in the RTKL that would prevent [reviewing courts] from simply adopting the findings of fact and conclusions of law of an

appeals officer when appropriate...." *Id.* at 473. Indeed, an appeals officer and the reviewing courts, regardless of where located on the hierarchical appeals scheme, are charged with performing the same task: "the duty of an appeals officer or a [reviewing court] is simply to determine whether the underlying agency correctly denied a requester access to a document under one of the statutory exceptions." *Id.* at 467.

▮▮▮▮ "[T]he power and authority to be exercised by administrative agencies must be conferred by the Legislature. The powers and authority must be either expressly conferred or given by necessary implication." *Commonwealth v. Butler County Mushroom Farm*, 499 Pa. 509, 454 A.2d 1, 4 (1982) (citations omitted). Under Pennsylvania law, "an administrative agency is vested with the implied authority necessary to the effectuation of its express mandates, because the Legislature cannot foresee all the problems incidental to the agency's carrying out its duties and responsibilities." *Sewer Authority of Scranton v. Pennsylvania Infrastructure Investment Authority*, 81 A.3d 1031, 1039 (Pa. Cmwlth.2013) (citations and internal quotation marks omitted).

▮▮▮▮ Although the Township is correct that there is no provision in the RTKL that explicitly grants the OOR or its appeals officers the authority to conduct *in camera* inspection, we conclude that such a power, triggered via a request by one of the parties, is necessarily implied. Pursuant to the RTKL, an appeals officer acts in a quasi-judicial capacity and serves as the initial fact-finder. An appeals officer also

---

**20.** "The OOR ... has only adopted 'Interim Guidelines' that do not constitute duly promulgated regulations." *Bowling*, 75 A.3d at 471 n. 20.

**21.** If the appeals officer fails to issue a final determination within 30 days, the appeal is deemed denied, unless the time-frame is extended by the requester. Section 1101(b)(2) of the RTKL, 65 P.S. § 67.1101(b)(2).

has discretion to hold a hearing, can accept and assess evidence that is deemed probative, is charged with the duty to determine whether a privilege is applicable, and is obligated to rule on all procedural issues. Based upon these expressly conferred duties, our Supreme Court has held that the statutory structure of the RTKL grants appeals officers "wide discretion" with respect to the procedure for deciding appeals. *Bowling*, 75 A.3d at 467.

The propriety of *in camera* review is well-accepted and it is oftentimes necessary for a fact-finder to utilize this tool in order to determine whether a claimed privilege is applicable. And, in some instances, *in camera* review may be the only way that an appeals officer can assess, in a meaningful fashion, whether an agency has met its burden of proving that a document is privileged by a preponderance of the evidence. Indeed, in this case, the Township refused to provide even a privilege log when requested to do so by the OOR.

Besides being a practical necessity for adjudicating issues of privilege, the authority to conduct *in camera* review is reasonably derivative of the above statutory powers granted to, and obligations of, an appeals officer, most particularly the appeals officer's right to rule on all "procedural matters on the basis of justice, fairness and the expeditious resolution of the dispute." 65 P.S. § 67.1101(b)(3). *See Bagwell v. Pennsylvania Department of Education*, 76 A.3d 81, 91–92 (Pa.Cmwlth. 2013) (*en banc*) (outlining "procedure matters" for the OOR to consider on remand "as the fact-finder in the first instance"). At the very least, Requester's request that the OOR's appeals officer conduct *in camera* review falls under the rubric of a "procedural matter" because *in camera* inspection is a procedural, fact-finding method to determine whether a privilege is applicable and, also, is a first-cousin of the appeals

officer's express power to conduct a fact-finding hearing.

In *Bowling* and *Levy*, this Court held that we have the authority to conduct *in camera* review. Naturally, our conclusion should extend to the OOR and its appeals officers because reviewing courts and appeals officers serve as concurrent and concordant fact-finders, and reviewing courts may adopt the findings of fact and conclusions of law of an appeals officer when appropriate. Ultimately, *in camera* review will better enable appeal officers to develop an adequate record for judicial review, and, at the same time, to render an informed and reasoned decision—one that is based upon a sufficient factual predicate—especially with regard to matters concerning privileged or sensitive material. Contrary to the Township's assertion, proposed Senate Bill No. 444 does not indicate the Legislature's intent to bestow, for the first time, the OOR with the power conduct *in camera* review. Instead, the Co–Sponsorship Memorandum advocates that the proposed changes would merely "clarify [that] the OOR may conduct *in camera* review," (Co–Sponsorship Memorandum at 3), thus supporting our conclusion that *in camera* review is already an implied power granted to the OOR under the current statutory structure and regime of the RTKL.

Therefore, we conclude that when the circumstances warrant it, and upon request by one of the parties, the OOR has the implied authority to order the production of documents for *in camera* review. Acting in its quasi-judicial capacity and upon request for *in camera* review, particularly in light of the Township's bald allegation that the requested documents are covered under the attorney-client privilege and/or work-product doctrine and refusal to provide privilege logs, we conclude that the OOR properly ordered the Township

to produce the documents for *in camera* inspection. *See, e.g., von Bulow v. von Bulow,* 811 F.2d 136, 146 (2d Cir.1987) (concluding that burden of proving the applicability of a privilege "is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the [privilege]."); *see also Schenck,* 975 A.2d at 597–98 & n. 9 (Saylor, J. dissenting from dismissal of appeal as improvidently granted, joined by Castille, C.J.) (collecting and discussing authority for the proposition that blanket assertions of privileges are insufficient to establish the applicability of a privilege).

### Conclusion

For the above-stated reasons, we conclude that our decision in *Silver* does not affect the subject matter jurisdiction of the OOR when it comes to determining whether a record is exempt as privileged and that *Silver's* holding is limited to the precept that the OOR cannot order the disclosure of records that fall within the ethics-based rule of confidentiality in Pa.R.P.C. 1.6. We further conclude that the RTKL, through necessary implication and in appropriate circumstances, upon request by a party, grants the OOR with the authority to conduct *in camera* review of documents to ascertain whether they constitute privileged material. Accordingly, this Court grants summary relief in favor of the OOR.

### *ORDER*

AND NOW, this 24th day of June, 2014, upon consideration of the Joint Motion for Summary Relief filed by the Office of Open Records (OOR) and Center Township (Township) and the parties supporting briefs, it is hereby ordered that the OOR's motion for summary relief is GRANTED, and the Township's motion for summary relief is DENIED. The Township shall produce to the OOR for *in camera* inspection unredacted copies of all responsive records withheld by the Township in connection with Beverly Schenck's May 13, 2013 request for solicitor's invoices. The Township shall make these documents available to the OOR within 30 days of this Court's order.

Jurisdiction relinquished.