IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brianna Dinmore,              :
                                  :
                  Petitioner   :
                                  :
           v.               : No. 350 C.D. 2021
                                  : Argued: December 13, 2021
Pennsylvania Department of    :
Community and Economic       :
Development (Office of Open    :
Records),                       :
                                  :
                 Respondent : 

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED: May 6, 2022

This matter is the latest chapter in an ongoing saga in which the Chester Water Authority (Authority) is seeking to obtain records under the Right-to-Know Law (RTKL)[1] from the Pennsylvania Department of Community and Economic Development (DCED) that relate to the City of Chester's (City) efforts to sell Authority assets to ease the City's financial distress.[2] In this case, Brianna Dinmore

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] As the Pennsylvania Supreme Court has observed:

**(Footnote continued on next page…)**

(Requester), a paralegal working for a law firm representing the Authority, petitions for review of the Final Determination of the Office of Open Records (OOR) granting in part, and denying in part, her appeal of the DCED's decision that partially denied

> For almost twenty-five years, the [City] has been designated as a distressed municipality under the [Municipalities Financial Recovery] Act or "Act 47," [Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§11701.101-11701.7121,] which is administered by the [DCED]. *See* [Section 121 of Act 47,] 53 P.S. §11701.121. Per this enactment, among the [DCED's] other responsibilities, the agency is tasked with appointing coordinators, which may be DCED employees or a private consultant, to formulate plans to address the financial problems of distressed municipalities. *See* [Section 221(a), (b) of Act 47,] 53 P.S. §11701.221(a), (b).
>
> In 2016, [the] DCED entered into a professional services contract with Econsult Solutions, Inc. [(Econsult)], a private consulting firm, to act – in the capacity of an independent contractor – as the recovery coordinator for the [City]. Econsult, in turn, subcontracted with Fairmount Capital Advisors, Inc. [(Fairmount)] and McNees, Wallace & Nurick, LLC [(McNees)] to serve as subcontractors, respectively providing professional financial and legal services.
>
> Significantly, Act 47 recovery plans must address numerous factors potentially useful in mitigating financial distress, including "[a]n analysis of whether . . . privatization of existing municipal services is appropriate and feasible[.]" [Section 241(8) of Act 47,] 53 P.S. §11701.241(8). Accordingly, Econsult was obliged to assess the potential privatization of local municipal authorities – including [the Authority] – and estimate the impact on the City's financial health. It was (and is) the Authority's position, however, that a cash infusion from the sale of the water authority is not in the best interests of the public, but rather, would benefit only those with an interest in an appearance of a successful financial turnaround for the City in the short term. The Authority therefore sought to remain abreast of the recovery planning.

*Chester Water Authority v. Pennsylvania Department of Community and Economic Development*, 249 A.3d 1106, 1108 (Pa. 2021) (footnotes omitted).

2

her request for records pursuant to the RTKL.  We vacate and remand to OOR to conduct an *in camera* review.

On April 14, 2020, Requester submitted a Standard Right-to-Know Law Request Form (Request) to the DCED seeking copies of records,[3] including

<hr>

[3] Specifically, Requester asked for the following:

> 1.      Copies of all communications, including letters and emails, between the [DCED] and any [City] Officials, including but not limited to Thaddeus Kirkland, Ronald Starr, Nafis Nichols, Portia West, William Morgan, Elizabeth Williams, William Jacobs, Edith Blackwell, Latifah Griffin, Michael Galante, Nicole Cogdell, Candace Thompson, Kenneth Schuster, and/or Edith Blackwell from November 1, 2017, to the present.

> 2.      Copies of all communications, including letters, reports, memoranda, and emails, between [McNees] and any [City] Officials, including but not limited to Thaddeus Kirkland, Ronald Starr, Nafis Nichols, Portia West, William Morgan, Elizabeth Williams, William Jacobs, Edith Blackwell, Latifah Griffin, Michael Galante, Nicole Cogdell, Candace Thompson, Kenneth Schuster, and/or Edith Blackwell from November 1, 2017, to the present.

> 3.      Copies of all communications, including letters, reports, memoranda, and emails, between [Econsult] and/or [Fairmount] and any [City] Officials, including but not limited to Thaddeus Kirkland, Ronald Starr, Nafis Nichols, Portia West, William Morgan, Elizabeth Williams, William Jacobs, Edith Blackwell, Latifah Griffin, Michael Galante, Nicole Cogdell, Candace Thompson, Kenneth Schuster, and/or Edith Blackwell from November 1, 2017, to the present.

> 4.      Copies of all communications, including letters, reports, memoranda, and emails, between the DCED and Buchanan Ingersoll and Rooney PC [(BI)] discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

**(Footnote continued on next page…)**

3

5. Copies of all communications, including letters, reports, memoranda, and emails, between the DCED and Greenberg Traurig LLP [(Greenberg)] discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

6. Copies of all communications, including letters, reports, memoranda, and emails, directly or indirectly exchanged between the DCED and Steven W. Smith, Esquire [(Smith)] discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

7. Copies of all contracts between the Commonwealth of Pennsylvania [(Commonwealth)] or the DCED and [BI] from November 1, 2017, to the present.

8. Copies of all itemized bills from [BI] for services related to the [City] from November 1, 2017, to the present.

9. Copies of all contracts between the [Commonwealth] or the DCED and [Greenberg] from November 1, 2017, to the present.

10. Copies of all itemized bills from [Greenberg] for services related to the [City] from November 1, 2017, to the present.

11. Copies of all itemized bills from [Smith] for services related to the [City] from November 1, 2017, to the present.

12. Copies of all communications, including letters and emails, between the DCED and [McNees] (including but not limited to David Unkovic, Esquire [(Unkovic)] or Adam Santucci, Esquire [(Santucci)]) discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

13. Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and [McNees] (including but not limited to [Unkovic] or [Santucci]) discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

14. Copies of all communications, including letters, reports, memoranda, and emails, between Kenneth Schuster and [McNees]

**(Footnote continued on next page…)**

4

(including but not limited to [Unkovic] or [Santucci]) discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

15. Copies of all communications, including letters, reports, memoranda, and emails, between [Greenberg] and [McNees] (including but not limited to [Unkovic] or [Santucci]) discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

16. Copies of all communications, including letters, reports, memoranda, and emails, between the DCED and Brooke Queenan discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

17. Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and Brooke Queenan discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

18. Copies of all communications, including letters, reports, memoranda, and emails, between the DCED and Stephen Mullin [(Mullin)] discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

19. Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and Stephen Mullin discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

20. Copies of all communications, including letters, reports, memoranda, and emails, between the DCED and Andrea Mannino discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

21. Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and Andrea Mannino discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

22. Copies of all communications, including letters, reports, memoranda, and emails, between the DCED and Daniel Connelly

**(Footnote continued on next page…)**

5

discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

23.    Copies of all communications, including letters, reports, memoranda, and emails, between Marita Kelly and/or Jamar Kelly and Daniel Connelly discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

24.    A copy of any report or analysis related to any potential monetization of the [Authority].

25.    Copies of minutes from any meetings related to the [City] since November 1, 2017.

2[6].    Copies of notes taken, memoranda prepared, or agendas in connection with any meetings related to the [City] since November 1, 2017.

2[7].    Copies of all communications, including letters, reports, memoranda, agendas, and emails, related to the [City's] Act 47 Recovery Coordinator's report [setting forth the financial condition of the City] and the Recovery Coordinator's recommendation since November 1, 2017.

2[8].    Copies of all communications, including letters, reports, memoranda, notes, and emails between the DCED, [Econsult], [McNees], [BI] and/or [Fairmount] and the auditor general regarding the [City] and or the Authority since November 1, 2017.

2[9].    Copies of all communications, including letters, reports, memoranda, and emails, between the DCED and Aqua Pennsylvania, Inc., its corporate affiliates, its parent company Aqua America (which recently changed its name to Essential Utilities) [(collectively, Aqua)], its agents, and/or its lobbyists discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

[30].    Copies of all communications, including letters, reports, memoranda, and emails, between the DCED and Pennsylvania American Water, its corporate affiliates, parent company, agents, and/or lobbyists discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

**(Footnote continued on next page…)**

6

3[1].	Copies of all communications, including letters, reports, memoranda, agendas, and emails, related to the [City's] issuance or attempted issuance of requests for proposals [(RFPs)] for the sale of the [Authority] (including but not limited to RFPs dated June 12, 2019, and February 12, 2020) since November 1, 2017.

3[2].	Copies of all communications, including letters, reports, memoranda, agendas, and emails, related to the March 5, 2020 meeting at Widener University between the [City] and [Aqua] since November 1, 2019.

3[3].	Copies of all communications, including letters, reports, memoranda, agendas, and emails, between the DCED and the Chester Economic Development Authority discussing the [Coronavirus Aid, Relief, and Economic Security (CARES)] Act[, 15 U.S.C. §§9001-9141] (or other federal legislation related to COVID-19), Harrah's Philadelphia Casino and Racetrack, the [City] and/or the [Authority] from November 1, 2017, to the present.

3[4].	Copies of all communications, including letters, reports, memoranda, agendas, and emails, between the DCED and the U.S. Small Business Administration discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

3[5].	Copies of all communications, including letters, reports, memoranda, agendas, and emails, between the DCED and PFM discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

3[6].	Copies of all communications, including letters, reports, memoranda, agendas, and emails, related to the [2020 Declaration of Fiscal Emergency] and/or potential appointment of a receiver for the [City] since November 1, 2019.

3[7].	Copies of all communications, including letters, reports, memoranda, agendas, and emails, between the DCED and any member of the Pennsylvania House of Representatives or Senate discussing the [City] and/or the [Authority] (including but not limited to discussions related to the [2020 Declaration of Fiscal Emergency] and/or potential appointment of a receiver for the [City]) from November 1, 2017, to the present.
**(Footnote continued on next page…)**

7

documents exchanged between Econsult, Fairmount, McNees, and other outside counsel, relating to the potential privatization and monetization of the Authority's assets under the City's Act 47 recovery plan.[4]  *See* C.R. Exhibit 1 at 11-15.

> 3[8].  Copies of all communications, including letters, reports, memoranda, agendas, and emails, between the DCED and Steven Goldfield discussing the [City] and/or the [Authority] from November 1, 2017, to the present.
>
> 3[9].  Copies of all communications, including letters, reports, memoranda, agendas, and emails, between the DCED and the Delaware County Council (including but not limited to Brian Zidek) discussing the [City] and/or the [Authority] from November 1, 2017, to the present.

Certified Record (C.R.) Exhibit 1 at 11-15.

> [4] In this regard, this Court has noted:
>
> > [T]he Secretary of the [DCED] filed an application in our original jurisdiction for the appointment of a receiver for the City in pursuant to [Act 47].  *See generally Davin v. City of Chester* (Pa. Cmwlth., No. 336 M.D. 2020, filed June 22, 2020) [] (*Davin I*).  In *Davin I*, a judge from this Court noted that the City had been designated as a distressed municipality under Act 47 since 1995; the City adopted a recovery plan in 1996; and, due to difficult and changing economic conditions, the City filed amendments to the recovery plan in 2006, 2013, and 2016.  *Id.*, slip op. at 1-2, 9.  This Court further explained that, as a result of the City's continuing financial crisis, Governor Tom Wolf issued a Declaration of Fiscal Emergency as to the City on April 13, 2020 [(2020 Declaration of Fiscal Emergency)].  *Id.* Ultimately, this Court concluded that the "City [was] projected to be insolvent within 180 days[] and [was] unable to ensure the continued provision of vital and necessary services," and, on June 22, 2020, we granted [the D]CED's petition, appointed a Receiver for the City, and ordered the Receiver to file a recovery plan within 30 days of our order.  *Id.*, slip op. at 6, 9.  Then, on June 7, 2021, this Court entered an order confirming the 2021 Revised Recovery Plan filed by the Receiver, concluding that the plan, *inter alia*, "contains a

**(Footnote continued on next page…)**

8

Following an initial delay due to the COVID-19 pandemic, and an agreed upon extension of time to produce the records, on August 5, 2020, and August 18, 2020, the DCED made an initial production of wholly or partially redacted documents in response to the Request and sought rolling production of the remaining records. On August 26, 2020, Requester filed an appeal of the DCED's response, asserting that the disclosed "records are heavily redacted, without explanation for the redactions," and that "[n]o redaction log was provided and there is no basis to understand why such redactions were made." C.R. Exhibit 1 at 9. On September 9, 2020, the parties agreed to stay the appeal pending the DCED's final production of documents in October 2020. *See id.* Exhibit 3.

On October 22, 2020, the DCED released its final response to the Requester, partially denying the Request on the bases that certain records: (1) contain personal identification information that is exempt from disclosure under Section 708(b)(6)(i)(A) of the RTKL;[5] (2) reflect the DCED's internal, predecisional deliberations (IPD) that are exempt from disclosure under Section 708(b)(10)(i)(A)

---

number of initiatives that set forth short- and long-term strategies to address structural issues" and "proposes certain initiatives . . . to address the fiscal emergency and continue to provide necessary and vital services in the City." *Davin v. City of Chester* (Pa. Cmwlth., No. 336 M.D. 2020, filed June 7, 2021) [] (*Davin II*), slip op. at 6-7.

*In re: Chester Water Authority Trust*, 263 A.3d 689, 694 n.6 (Pa. Cmwlth. 2021).

[5] 65 P.S. §67.708(b)(6)(i)(A). Section 708(b)(6)(i)(A) exempts from disclosure "[a] record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number."

9

of the RTKL;[6] (3) are the DCED's working papers that are exempt from disclosure under Section 708(b)(12) of the RTKL;[7] and (4) are protected by the Pennsylvania Constitutional right to privacy,[8] the attorney-client privilege, and the work-product doctrine[9]; and released records and information not subject to the foregoing exemptions and/or exclusions. *See* C.R. Exhibit 4 at 5-7.

---

[6] 65 P.S. §67.708(b)(10)(i)(A). Section 708(b)(10)(i)(A) exempts from disclosure "[t]he internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, . . . contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations."

[7] 65 P.S. §67.708(b)(12). Section 708(b)(12) exempts from disclosure "[n]otes and working papers prepared by or for a public official or agency employee used solely for that official's or employee's own personal use, including telephone message slips, routing slips and other materials that do not have an official purpose."

[8] As the Pennsylvania Supreme Court has explained:

> In [*Pennsylvania State Education Association v. Department of Community and Economic Development*, 148 A.3d 142 (Pa. 2016)], the Pennsylvania State Education Association [] sought an injunction to prevent the release of the home addresses of public school employees under the RTKL. After exploring the right to privacy under the Pennsylvania Constitution, this Court concluded that our organic charter protects a person's address and other personal information from disclosure by the government unless the public interest in dissemination outweighs the privacy interest. After weighing what we deemed to be the strong privacy interests in protecting home addresses from disclosure against the negligible public benefit in disclosure, the Court found the balancing of these interests precluded disclosure of the employees' home address.

*Markham v. Wolf*, 190 A.3d 1175, 1190 (Pa. 2018).

[9] Section 102 of the RTKL defines "privilege," in relevant part, as "[t]he attorney work-product doctrine, the attorney-client privilege, . . . or other privilege recognized by a court interpreting the laws of this Commonwealth." 65 P.S. §67.102. In turn, Section 305(a)(2) states:
**(Footnote continued on next page…)**

10

In an October 29, 2020 email, Requester notified the OOR that she "will continue the appeal of [the] DCED's redactions on the remaining stated bases – namely 65 P.S. §67.708(b)(10) ([IPDs]); attorney-client privilege and work-product doctrine," because "[the] DCED has not established that the redacted information qualifies for the stated exemptions under Section 708 of the RTKL and/or the claimed privileges and protections." C.R. Exhibit 6 at 59. On November 13, 2020, Requester submitted a Position Statement in support of her appeal in which she again asserted the foregoing as the bases of her appeal before the OOR. *See id.* Exhibit 6 at 11-13.

On November 16, 2020, the DCED submitted a Position Statement again asserting that it redacted emails pursuant to the attorney-client privilege and the work-product doctrine, and that it redacted emails and portions of a memorandum that reflect exempt IPDs. *See* C.R. Exhibit 8. In support, the DCED also submitted the affidavits of Santucci, an attorney with McNees, *see id.* Exhibit 8 at 36-39; Mullin, the Principal and President of Econsult, *see id.* Exhibit 8 at 40-43;

---

"A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if: . . . the record is protected by a privilege[.]" 65 P.S. §67.305(a)(2). In this regard, Pa.R.Civ.P. 3003.3 states, in relevant part:

> [A] party may obtain discovery of any matter discoverable under [Pa.R.Civ.P.] 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney . . . . The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories.

Additionally, Section 5928 of the Judicial Code states: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. C.S. §5928.

11

and the Agency Attestation of Danica Hoppes (Hoppes), the Agency Open Records Officer (ORO) for the DCED, *see id.* Exhibit 8 at 90-93.

By November 23, 2020 and November 24, 2020 emails, the OOR's Appeals Officer obtained Requester's consent for an extension to file the Final Determination and directed the DCED to submit updated affidavits and an exemption log. *See* C.R. Exhibit 9 at 2-3. Accordingly, on January 4, 2021, the DCED submitted a new Agency Attestation executed by ORO Hoppes, new affidavits executed by Santucci and Mullin, and an Exemption Index. *See id.* Exhibit 10 at 7-11, 13-37, 39-43, and 45-48.

On January 11, 2021, Requester submitted a Supplemental Position Statement asserting that: (1) the DCED's Exemption Index "reflects an absolute abuse of the [IPD] exception" based on the disclosure of the information to its contractors, the information does not relate "to a particular decision," and the undisclosed information is purely factual; (2) the DCED "utilizes the attorney-client privilege and/or work[-]product exemption where it is clear that any privilege has been waived" because the records were produced by counsel for the City, "the [DCED] does not claim[,] nor could it[,] any common interest with the City," so that "the material was never privileged in the first place" or that "any privilege that may have otherwise attached had this information remained with the City and its counsel has undoubtedly been waived" based on its disclosure to a third party, *i.e.*, the DCED; and (3) the DCED's Exemption Index shows that it improperly failed to disclose a memo of talking points prepared for its Secretary by his staff to prepare him for a telephone call with the City's mayor under Section 708(b)(12) because this "personal use" exemption has no application to such information used in the Secretary's "occupational capacity." C.R. Exhibit 12 at 3-6 (emphasis in original

12

and footnote omitted). "On February 5, 2021, in response to the OOR's request for a copy of the redacted records, the [DCED] submitted an updated log, supplemental position statement and the redacted records." C.R. Exhibit 15 at 8.

On March 1, 2021, the OOR's Appeals Officer issued the Final Determination. *See* C.R. Exhibit 15 at 2-19. With respect to the DCED's invocation of the attorney-client privilege and the work-product doctrine, the Appeals Officer found that, based on ORO Hoppes' November 13, 2020 Agency Attestation,[10] the

_____

[10] In relevant part, ORO Hoppes' Agency Attestation states:

> 4.     The administration of the Act 47 Program in the context of the City requires decision making by the DCED staff, [Econsult], [Fairmount], and [McNees] ("Act 47 Team"), the [City], and the Governor's office. Deliberations occurred amongst all these parties leading up to making final decisions regarding various issues related to the financial condition of the City and proposed adjustments to the City's Act 47 economic recovery plan ("Recovery Plan"), including whether to declare a fiscal emergency under Act 47 and whether to appoint a receiver.

> 5.     [The] DCED redacted portions of emails and withheld certain attachments from [Santucci], an Attorney with McNees, to [the] DCED staff and the Act 47 Team which consist of legal conclusions and mental impressions and deliberating proposed courses of action related to various litigation and settlement discussions and recommendations in connection with the City's Recovery Plan. [] Santucci is a member of the Pennsylvania [B]ar and is counsel to [the] DCED under the Act 47 Contract. The withheld communications were not shared beyond [the] DCED and the Act 47 Team. These communications also constitute [IPDs] by and between [the] DCED and its Act 47 contractors. [The] DCED also withheld litigation work descriptions from McNees billing records which would reveal case strategy. [] Santucci is a licensed attorney with the law firm of [McNees]. Under the Act 47 contract, McNees provides legal advice to [the] DCED and serves as legal adviser of the Act 47 Team. The emails composed by [] Santucci contain his analysis of various legal issues involving the City. The

**(Footnote continued on next page…)**

13

attachments relate to communications of fact amongst [] Santucci, [the] DCED staff and the Act 47 Team necessary for [] Santucci to provide the legal analysis. [] Santucci's emails constitutes attorney-product because [they were] created in connection with McNees' duties under the Act 47 contract to provide the necessary legal advice to [the] DCED and the Act 47 Team and because [their] disclosure would reveal his mental impressions and conclusions regarding litigation the [City] was actively involved in and how it impacts the Act 47 Team's goal of improving the financial condition of the City. These withheld records are exempt pursuant to the attorney client privilege and [the] DCED has established all elements of that privilege.

\* \* \*

7.      [The] DCED withheld emails and attachments, and memorandums prepared by in-house counsel (members of the DCED's Office of Chief Counsel which serves as in-house counsel to [the] DCED for all legal matters including the administration of the Act 47 Program) including Assistant Counsel Sean Campbell, Chief Counsel Michael Adams, former Chief Counsel Chris Houston, Deputy Chief Counsel Jill Busch, and Special Counsel Rob Teplitz communicated amongst in-house counsel to [the] DCED staff which is legal advice (legal conclusions and mental impressions) regarding certain legal requirements of Act 47 which also constitute [IPDs]. All DCED in-house counsel are members of the Pennsylvania Bar and serve their DCED client. The redacted communications were not shared with outside parties. These records concern in-house counsels' advice, created in connection with their duty to provide legal services to [the] DCED, regarding the legal requirements of Act 47 in connection with the City's status as a distressed municipality which would disclose the legal conclusions and mental impressions of in-house counsel about these legal requirements of Act 47. Imparting this advice required [the] DCED staff to communicate facts to in-house counsel to base its opinions on. Emails communicated amongst [the] DCED staff originating from Assistant Counsel Justin Zimmerman, who also serves as in-house counsel to [the] DCED, concerning the fulfillment of the RTKL request at issue here were also withheld because they concerned [the] DCED's compliance with the RTKL in responding to the Requester's RTKL request.

**(Footnote continued on next page…)**

14

DCED "demonstrated that records identified as redacted pursuant to the attorney-client privilege and/or the attorney work-product doctrine are protected by those privileges" because "[t]hey are between the [DCED], [the] City, and various in-house and outside counsel." *Id.* at 14. The OOR's Appeals Officer reached this conclusion because Hoppes "affirm[ed] that the records include, among other things, 'legal conclusions and mental impressions and deliberating proposed courses of action related to various litigation and settlement discussions and recommendations in connection with the City's Recovery Plan,'" the records "contain [Santucci's] analysis of various legal issues involving the City," and they contain "emails to and from in-house counsel concern[ing] 'in-house counsel's advice, created in connection with their duty to provide legal services to [the DCED] . . . [an]d would

---

\* \* \*

> 10.    [The] DCED withheld emails and attachments amongst the City's Solicitor, outside counsel for the City (attorneys of [Greenberg]), consultants for the City from Transportation Funding Consultants, officials of the City, [the] DCED staff, the Act 47 Team, and counsel [] Santucci deliberating and discussing various agreements related to litigation, which also includes drafts of settlement agreements. Ken Shuster [(Shuster)] is the City's solicitor and a licensed attorney. [Greenberg] is a law firm which represents the City in various litigation. Some of these records were created by these attorneys external to [the] DCED in connection with litigation and settlement negotiations which reveal the mental impressions and legal conclusions of these attorneys' external to [the] DCED. These records were created as a result of [] Shuster's representation of the City as well as [Greenberg's]. Some of the records are drafts of settlement agreements connected to resolving litigation the City is involved in. Neither [] Shuster nor counsel to [Greenberg] are adverse parties to [the] DCED or the Act 47 Team and collaborate with [the] DCED and the Act 47 Team on certain issues in assisting the City.

C.R. Exhibit 8 at 90-93.

15

disclose the legal conclusions and mental impressions of in-house counsel about these legal requirements of Act 47.'" *Id.* However, because Hoppes attested that some of the records included facts communicated "'amongst []Santucci, [the] DCED staff, and the Act 47 Team necessary for []Santucci to provide the legal analysis,'" and facts communicated by the DCED staff "for in-house counsel to impart advice" and "'to in-house counsel to base its opinions on,'" the Appeals Officer determined that, "to the extent that the records contain only factual information, the underlying factual information is not subject to the privilege." *Id.* at 15.

The Appeals Officer also affirmed the DCED's application of Section 708(b)(10)(i)(A) to communications with outside counsel, the City, and the Act 47 Team as IPDs. *See* C.R. Exhibit 15 at 15-18. Finally, the Appeals Officer did not reach Requester's Section 708(b)(12) claim with respect to the Secretary's call sheet based on her determination that "the call sheet is exempt as reflecting [IPDs]" under Section 708(b)(10)(i)(A). *Id.* Exhibit 15 at 18 n.3. Accordingly, the Appeals Officer granted Requester's appeal in part, and denied it in part, and directed the DCED to provide the following records to Requester with the underlying facts unredacted: (1) 000014-000028A; (2) 000030A-000092A; (3) 000782A; (4) 000998A-001017A; (5) 001291A-001298A; and (6) 001307A-001319A. *Id.* Exhibit 15 at 18. Requester then filed the instant petition for review in this Court from the Appeals Officer's Final Determination.[11]

However, on April 29, 2021, the Supreme Court issued its opinion in *Chester Water Authority* in which it reversed this Court's affirmance of OOR's

---

[11] This Court's standard of review of an OOR Final Determination under the RTKL is *de novo*, and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013). "[W]e may substitute our own findings of fact for that of the agency or rely upon the record created below." *Pennsylvania State Police v. Muller*, 124 A.3d 761, 763 n.2 (Pa. Cmwlth. 2015).

16

application of IPDs exempted by Section 708(b)(10)(i)(A) to communications with outside Act 47 consultants in the prior action for the related Act 47 records.[12]  With respect to the DCED's claimed exemption for such IPDs, the Pennsylvania Supreme Court stated:

> [T]he statutory provision [in Section 708(b)(10)(i)(A)] facially does not apply to communications with outside consultants.  *See generally N[orth] Hills News Record v. Town of McCandless*, [722 A.2d 1037, 1040 (Pa. 1999)] (explaining that, where the provisions of a statute are clear, courts "are forbidden from diverging from the plain meaning under the mere pretext of pursuing the spirit of the enactment").  And the requirement of narrow construction further solidifies the interpretation that private consultants providing services as independent contractors do not qualify as agencies, members, employees, or officials who may engage in protected internal communications.

* * *

---

[12] In the opinion, the Court noted:

> In the present briefing, the [DCED] intermittently refers to Econsult and the [Fairmount] firms as "agents for [the] DCED."  The governing professional services contract, however, explicitly defines Econsult's relationship with the D[CED] as being that of an independent contractor and admonishes that "[n]othing contained herein shall be so construed as to create an . . . agency . . . relationship[.]"  Since the [DCED] offers no accounting, on this point, for the contract that it otherwise recognizes as controlling, we reject the suggestion of an agency relationship from the outset.

*Chester Water Authority*, 249 A.3d at 1108 n.2 (citations omitted).  Likewise in the instant matter, Article IV of the Contract for Professional Services states: "Notwithstanding anything contained herein to the contrary, the rights and duties hereby granted and assumed by [Econsult] are those of an independent contractor only.  Nothing contained herein shall be so construed as to create an . . . agency . . . relationship between the [DCED] and [Econsult]."  C.R. Exhibit 8 at 47.

Significantly, the Legislature knows how to protect agency communications with outsiders; indeed, it has done so in other provisions of the [RTKL]. *See, e.g.*, [Section 708(b)(26),] 65 P.S. §67.708(b)(26) (excepting from disclosure, *inter alia*, pre-acceptance procurement proposals and bidder financial information). And it would have been a straightforward matter, in Section 708(b)(10)(i)(A), to have listed outside consultants along with "members, employees or officials," but the fact of the matter is that the General Assembly did not do so. In light of the strong, competing policy interests involved, we rest our decision upon the statutory language and leave consideration of any adjustments to the open-records regime to the policy-making branch. *Accord Rojas* [*v. Federal Aviation Administration*, 927 F.3d 1046, 1058 (9th Cir. 2019), *aff'd in part and vacated and remanded in part*, 989 F.3d 666 (9th Cir. 2021)] (explaining that, if adherence to the statutory scheme as written proves unworkable, "the proper remedy lies with Congress, not the courts").

We hold that Section 708(b)(10)(i)(A) does not serve to insulate communications exchanged between a Commonwealth agency and a private consultant from the [RTKL's] general requirement for openness.

*Chester Water Authority*, 249 A.3d at 1113-14.

Thus, at the time that the Final Determination was issued in this matter, OOR did not have the benefit of the Supreme Court's opinion in *Chester Water Authority*, the prior case in which the Authority sought information under the RTKL regarding the City's plans to monetize the Authority's assets as part of its Act 47 Recovery Plan. As conceded by Requester, in July 2021, the DCED complied with the Supreme Court's opinion in *Chester Water Authority* by subsequently "produc[ing] to Requester the public information it (a) shared with its consultants and their contractors (Econsult, McNees and [Fairmount]) and (b) withheld solely on the basis of the IPD Ex[emption], mooting the issue on appeal as to this narrow

18

subset of records only." Brief of Petitioner at 20. Indeed, Requester further concedes:

> As detailed above in the statement of the case, since [Requester] filed her petition with this Court alleging error in the [DCED's] withholding of material shared with its outside consultants and/or contractors pursuant to the IPD Ex[emption], the [DCED] has complied with the Supreme Court's decision in [*Chester Water Authority*] and produced the material that it had shared with McNees, Econsult and/or [Fairmount] and originally withheld solely on this basis.

*Id.* at 38 n.10.

As a result, OOR asserts that it was not required to address any records that were withheld on another basis separate and apart from the IPD Exemption except for those bases asserted by Requester in her appeal. *See, e.g.*, *Walbert v. North Coventry Township Police Department* (O.O.R. Final Determination, No. AP 2021-1074, mailed August 19, 2021), slip op. at 8 n.3 ("Because the report is exempt under Section 708(b)(17) of the RTKL, [65 P.S. §67.708(b)(17),] the OOR need not address the [Police] Department's other grounds for denial."); *Stein v. Pennsylvania Department of Corrections* (O.O.R. Final Determination, No. AP 2009-0414, issued June 17, 2009), slip op. at 6 ("The OOR notes that the [Department of Corrections] argued that the first names of [Corrections Officers] would be protected under other grounds. As the records were properly withheld under [Section 708(b)(1)(ii),] 65 P.S. §67.708(b)(1)(ii), the OOR need not address them here."). As indicated above, the DCED provided Requester with the Exemption Index listing the separate bases independent from the IPD exemption of Section 708(b)(10)(i)(A) upon which the individual records were withheld. *See* C.R. Exhibit 10 at 13-37.

19

However, the Supreme Court did not address the attorney-client privilege, or the work-product doctrine claims in *Chester Water Authority*, deeming those claims to be moot. *See id.* at 1114-15. In this appeal, Requester asserts that the attorney-client privilege and the work-product doctrine do not shield the requested records from disclosure[13] because: (1) the DCED did not establish the

[13] As this Court has observed:

> We recently assessed OOR's application of the attorney-client privilege in another case involving [the r]equester[.] We held that to establish the attorney-client privilege, the agency asserting it must demonstrate that:
>
> > (1) The asserted holder of the privilege is or sought to become a client.
> >
> > (2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
> >
> > (3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
> >
> > (4) The privilege has been claimed and is not waived by the client.
>
> The work-product doctrine, while closely related to the attorney-client privilege, provides broader protection. Confidential information flows from the client to the attorney, and vice versa, in the attorney-client relationship. The attorney-client privilege protects such confidential communications. By contrast, the work-product privilege only applies to "the mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties. . . ." Neither privilege protects mere facts.

**(Footnote continued on next page…)**

20

requisite attorney-client relationship with the City's records or the McNees records; (2) the DCED waived any privilege by sharing the information with third parties such as the City, outside counsel, and the other members of the Act 47 Team; (3) the DCED continues to improperly exploit the IPD Exemption of Section 708(b)(10)(i)(A) to any and all information relating to the City's attempts to monetize the Authority's assets to alleviate its debt issues; and (4) the OOR erred in failing to address the DCED's application of the Section 708(b)(12) exemption for records solely used by an employee for personal use to records that were, in fact, used for work-related purposes.

At oral argument in this case, both parties acknowledged that *in camera* review of the records in this matter was requested but denied by the OOR.  As this Court has explained:

> It is well established that OOR and its appeals officers have authority to order and undertake *in camera* review of documents that have been withheld or redacted where, in the appeals officers' judgment, *in camera* review is necessary to develop an adequate record to rule on the agency's claims of privilege or exemption. *UnitedHealthcare of Pennsylvania, Inc. v. Pennsylvania*

> \* \* \*

> It is well[]established that once attorney-client communications are disclosed to a third party, the attorney-client privilege is waived.  Likewise, the work-product doctrine, as a "qualified privilege," may be waived by disclosure to third parties. As we [have] held[,] a requester challenging the attorney privileges based on waiver by disclosure to third parties bears the burden of proving that waiver.  We confirmed the attorney privileges apply in the RTKL context as they do in other contexts, by placing this burden on the requester.

*Pennsylvania Department of Education v. Bagwell*, 114 A.3d 1113, 1123-24 (Pa. Cmwlth. 2015) (citations omitted).

21

*Department of Human Services*, 187 A.3d 1046, 1060 (Pa. Cmwlth. 2018); *Highmark Inc. v. Voltz*, 163 A.3d 485, 490-91 (Pa. Cmwlth. 2017)[;] *Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119, 1124 n.5 (Pa. Cmwlth. 2017); *Township of Worcester v. Office of Open Records*, 129 A.3d 44, 59-60 (Pa. Cmwlth. 2016); *Office of Open Records v. Center Township*, 95 A.3d 354, 369-71 (Pa. Cmwlth. 2014)[.]

> An appeals officer has discretion in developing the record to allow meaningful appellate review. To develop the record, an appeals officer may undertake *in camera* review or request submissions as to material facts.

*Highmark*, 163 A.3d at 490-91 (citations omitted).

*County of Berks v. Pennsylvania Office of Open Records*, 204 A.3d 534, 544 (Pa. Cmwlth. 2019). *See also McKelvey v. Pennsylvania Department of Health*, 255 A.3d 385, 413 (Pa. 2021) ("[I]t was incumbent upon the OOR, and, ultimately, the Commonwealth Court, to consider the alleged exemptions applicable to such financial information, to review the information at issue – *in camera* if beneficial – and to fully consider the reasons proffered to support exemption from disclosure."). Because we are unable to conduct meaningful appellate review of the foregoing allegations of error based on the present state of the record in this matter, the case is remanded to the OOR to conduct an *in camera* review of the requested records and to address all of the claimed exemptions that are applicable to those records.

Accordingly, the OOR's Final Determination is vacated, and the matter is remanded to the OOR to conduct an *in camera* review in accordance with the foregoing memorandum opinion.

_____
MICHAEL H. WOJCIK, Judge

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brianna Dinmore,          :
                                 :
              Petitioner   :
                                 :
        v.                 : No. 350 C.D. 2021
                                 :
Pennsylvania Department of   :
Community and Economic     :
Development (Office of Open   :
Records),                    :
                                 :
           Respondent :

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>May</u>, 2022, the Final Determination of the Office of Open Records dated March 1, 2021, is VACATED, and the above-captioned matter is REMANDED to the Office of Open Records to conduct an *in camera* review of the requested records in accordance with the attached memorandum opinion and issue a new determination from which either party may file a petition for review.

Jurisdiction is RELINQUISHED.

_____
MICHAEL H. WOJCIK, Judge